Argued and submitted November 20, 1979,
reversed and remanded February 25, 1980

RON JONES & CO.,
*Appellant,*
*v.*
JAQUITH, et al,
*Respondents - Cross-Appellants.*

(No. 107292, CA 14055)

606 P2d 1179

Thomas B. Brand, Salem, argued the cause for appellant. With him on the brief was Brand, Lee, Ferris & Embick, Salem.

Valerie J. Vollmar, Salem, argued the cause for respondents - cross-appellants. With her on the briefs was Clark, Marsh & Lindauer, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

BUTTLER, P. J., dissenting.

[727]

**GILLETTE, J.**

This is a suit for specific performance of a land sale contract. Plaintiff purchaser alleged that defendants, sellers, failed to convey the property in question upon demand and after full performance by plaintiff. Both sides moved for summary judgment. The trial court granted summary judgment for the defendants. Plaintiff appeals from this order and, in addition, assigns the award of attorney fees to defendants as error. Defendants cross appeal on the ground that the award of attorney fees is inadequate. We reverse and remand.

The marriage of defendants was dissolved on August 26, 1977. In that proceeding, Mrs. Jaquith was awarded the real property which is the subject of this suit. Mr. Jaquith appealed that decision, contending that the trial court erred in its evaluation of the marital property. The final appellate decision was not rendered until July 25, 1978. *Jaquith and Jaquith,* 33 Or App 489, 578 P2d 508 (1978).

On January 25, 1978, Mrs. Jaquith entered into an earnest money agreement for the sale of the property to the plaintiff. As initially prepared, the agreement provided for a closing date of April 1, 1978, and made the sale contingent upon the plaintiff's obtaining satisfactory financing. Mrs. Jaquith's attorney in the dissolution proceeding was concerned that the pending appeal would not be decided by April 1, 1978. Therefore, an addendum was added to the earnest money agreement, contemporaneous with its execution, to provide for an extension of the closing date if necessary. It provided, in part, that:

"Sale subject to appellate court's affirmation of decree awarding seller fee title to the property. This agreement shall be automatically extended for a period of 30 days if the final appellate decision is not rendered by April 1, 1978"

A second addendum to the agreement was prepared by the plaintiff and executed on March 21, 1978. It stated:

[729]

"[A second contingency not pertinent to this case] is hereby removed by the purchaser. The purchaser is ready to proceed with the closing of the sale on April 1, 1978, or as soon thereafter as the seller is able to close the sale."

On May 1, 1978, the plaintiff wrote to the defendant stating that he had deposited $5,000 in an escrow account on April 28 to close the agreement. He indicated that he was ready to close and might be willing to accept the property subject to the contingency that the trial court's award to Mrs. Jaquith be upheld on appeal.

Mrs. Jaquith considered the earnest money agreement to be null and void because more than 30 days had passed since the original April 1 closing date without a final appellate decision being rendered. She refused to proceed and also refused a subsequent offer on May 12, 1978, by the plaintiff to increase the price. This lawsuit followed.

The issue to be determined is whether the first addendum means, as defendant maintains, that the closing date was extended only thirty days beyond April 1 or, as the plaintiff maintains, it extended the closing date to thirty days beyond the final appellate court decision, whenever that might occur.

As a general rule, the construction of a contract is a question of law for the court to decide, except where the language of the contract is ambiguous. *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 643, 576 P2d 1244 (1978). When the language of a contract is ambiguous, extrinsic evidence may be received to resolve the ambiguity and the interpretation of the contract becomes a question for the trier of fact. *Evenson Masonry, Inc. v. Eldred,* 273 Or 770, 772, 543 P2d 663 (1975). Whether a contract is ambiguous or not is a question of law for the court to decide. *Ibid.*

We conclude that the language of the addendum is ambiguous. The sentences,

"Sale subject to appellate court's affirmation of decree awarding seller fee title to the property. This agreement shall be automatically extended for a period of thirty days if the final appellate decision is not rendered by April 1, 1978."

are subject to at least two interpretations: (1) in the event no final appellate decision is rendered by April 1, 1978, the agreement is extended *for thirty days from April 1, i.e.,* to May 1, 1978; or (2) in the event no final appellate decision is rendered by April 1, 1978, the agreement is extended *for thirty days from the day that the final appellate decision is rendered.* We do not suggest that these two interpretations are *equally* plausible; both are, however, sufficiently plausible to create an ambiguity which requires a reviewing court to resort to extrinsic evidence. *Evenson Masonry, Inc. v. Eldred, supra.*

In the posture in which this case comes to us, a review of the extrinsic evidence does not resolve the case. The matter was decided on cross motions for summary judgment. Affidavits and depositions on file in connection with those motions indicate, not surprisingly, that the parties disagree as to what they intended by the addendum. The seller adopts suggested interpretation number (1), *supra;* the buyer agrees with number (2). Resolution of the pivotal issue requires, among other things, assessment of the credibility of witnesses—precisely the sort of evaluation not permitted in a summary judgment proceeding. This case must be tried. The trial court erred in entering summary judgment for defendant.

Reversed and remanded for trial.[1]

**BUTTLER, P. J.,** dissenting.

I dissent because both parties agree that all of the evidence is in the record, that there is no issue as to a

---

[1] In view of the disposition we made of this case, we do not reach plaintiff's second assignment of error concerning attorney's fees.

material fact and that the sole issue is whether the agreement terminated by its own terms on May 1, 1978. I am at a loss to understand any purpose in remanding the case for trial. I would reverse and remand for the entry of a summary judgment in favor of plaintiff (purchaser).

The fundamental errors in the majority opinion lie in its failure to distinguish between a "closing date" and a "termination date," and its failure to follow the accepted rules governing the construction of documents.

Briefly stated, the facts are that prior to the execution of the earnest money agreement, the defendant sellers' marriage had been dissolved, and the dissolution proceeding was pending on review in this court. Mr. Jaquith contended on appeal that the trial court erred in its evaluation of the marital property and sought a modification of the decree which could have affected defendant's title to the property covered by the earnest money agreement. However, pending the appeal, defendant, through her own real estate agent, offered the property for sale and plaintiff qualifiedly accepted her offer by executing the earnest money agreement involved in this litigation.

The earnest money agreement provided that the *closing date* would be April 1, 1978, and that the agreement was subject to the purchaser's obtaining satisfactory financing arrangements by that date. That provision was for the purchaser's benefit. Without more, then, if the purchaser obtained satisfactory financing by April 1, 1978, but seller was unable to deliver marketable title at that time, the purchaser could have either obtained damages from defendant for breach, or could have waived the time essence provision requiring closing on April 1 and agree to a later closing.

Defendant, however, before signing the earnest money agreement, consulted her attorney in the dissolution proceeding, who recognized the problem and

prepared an addendum to the earnest money agree-ment, which stated in part:

> "Sale subject to appellate court's affirmation of decree awarding seller fee title to the property. This agreement shall be automatically extended for a period of 30 days if final appellate decision is not rendered by April 1, 1978."

Defendant then signed the earnest money agreement, and both parties signed the addendum, making it a part of the original earnest money agreement. There is no contention of over-reaching or unfair dealing on the part of the purchaser; in fact, the seller had an attorney from the outset and the purchaser did not until later.

I submit that by the time the addendum was prepared, both parties realized that the marketability of the seller's title to the property might not be resolved by April 1, the original *closing date,* and that the seller ought not be put in the position of defaulting under the agreement because the appeal of the dissolution decree might not be resolved. ORS 42.220 provides:

> "In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language he is interpreting."

When that rule of construction is applied here, there is a latent ambiguity: does the language of the addendum (1) simply extend the closing date for 30 days, (2) extend the closing date to a time not more than 30 days after the appeal is finally determined, or (3) provide a termination date after which the deal is off unless it is concluded prior thereto? Where there is an ambiguity, extrinsic evidence is admissible. ORS 41.740; *see Kinnaman v. Bailey,* 241 Or 634, 406 P2d 145 (1965). Although the majority recognizes an ambiguity permitting the reception of extrinsic evidence to resolve the ambiguity, they conclude that by virtue thereof the interpretation of the contract becomes a question for the trier of fact requiring a remand of this

case for trial. That conclusion assumes there is an issue of fact to be resolved, and I agree with the parties that there is none.

There is no dispute as to the circumstances surrounding the execution of the agreement or the original addendum, drawn by the seller's attorney, as a part of the original agreement. The closest thing to an issue of fact arising from the extrinsic evidence is that the buyer stated he understood the original addendum to extend the *closing date* to a time not more than 30 days after the appeal was finally determined [(2) above], whereas the seller said she understood that addendum simply extended the *closing date* for 30 days, that is until May 1, 1978 [(1) above].

I respectfully submit that in the context of this case, the stated difference in the parties' understanding would not change the result. The reason this is so is that the closing date provided for in the agreement does not terminate the rights of the parties if it is not met; rather, it gives rights to the party ready, able and willing to close as of the closing date against the one who defaults.

If, as the seller stated, the closing date were merely extended to May 1, 1978, the agreement expressly provides that if seller approves the sale and prior to closing the title to the premises is not marketable, or cannot be made so within 30 days, or if seller fails to consummate the sale, the purchaser is entitled to a return of his earnest money and seller must pay all costs and legal fees, all without constituting "a waiver of other remedies available to him." At the least, the purchaser would be entitled to damages for the breach; he could also waive the time essence clause and seek specific performance of the agreement. The buyer's understanding of the addendum would only postpone the triggering of those rights until 30 days after the appeal was determined.

The majority fails to recognize the significance of the closing date, but treats it as a termination date

after which the rights of both parties cease. Although it is true, as the majority points out, the seller stated that after the May 1 closing date had passed she considered the agreement to be null and void, that view of the matter is a legal conclusion. There is no credibility question because even if the trier of fact believes the seller honestly thought that after May 1, the legal conclusion to be drawn from her prior statement that the addendum extended the closing date to May 1 is one to be made by the court, not the trier of fact. As I view the case, that issue is the only one involved, and it is a question of law.

To reach the conclusion asserted by seller requires that something not in the agreement be read into it. ORS 42.230 precludes our doing that. It provides:

"In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

There is absolutely nothing in the printed form of the agreement which even suggests that after a certain date the agreement terminates and neither party has any rights; as noted above, it provides expressly to the contrary. The original addendum adds nothing to the agreement in that respect; it extended the April 1 date typed in the printed form—the closing date. Any attempt to interpret it as providing a termination date would be construing an ambiguous provision in favor of the party who prepared it. The accepted rule is to the contrary. *U. S. Nat. Bank v. Erickson et al* 208 Or 41, 300 P2d 448 (1956).

The only remaining interpretation which takes into account the circumstances in which the agreement was made, which does not put the seller into an unintended default (as in (1)) and does not "insert what has been omitted" (as in (3)) is that set forth in (2) above.

[735]

That interpretation is consistent with the circumstances and is fair to both parties, who intended to form a binding contract subject only to the purchaser's obtaining financing and the seller's clearing her title.

By the middle of March, 1978, the purchaser had obtained the required financing, and so notified the seller. At that time the purchaser prepared a "second addendum" to the agreement, which was executed by both parties on March 21, 1978. It provided:

> "The contingency in the agreement 'subject to satisfactory financing' is hereby removed by the purchaser. The purchaser is ready to proceed with the closing of the sale on April 1, 1978, or as soon thereafter as the seller is ready to close the sale."

Whatever ambiguity might have existed prior to the execution of the second addendum, that ambiguity was resolved by it. Even though it was prepared by the purchaser, it was more favorable to the seller in that it did not permit the purchaser to declare a default by seller, with the consequences noted above, until and unless the seller was able to convey marketable title to the property, but refused to do so.

On May 1, 1978, the purchaser advised the seller by letter that he had deposited $5,000 in escrow on April 28, and that he was ready, willing and able to close the transaction. As I view the case, even accepting the seller's testimony that the first addendum simply extended the closing date automatically for 30 days if there was no final appellate decision rendered by April 1, 1978, if the purchaser was ready, willing and able to perform by May 1, 1978, and the seller was not able to furnish a marketable title to the property at that time, at the very least the purchaser is entitled to damages. Here the purchaser was ready, willing and able to perform by the closing date, but was willing to waive the time essence clause and extend the closing date until 30 days after the final appellate decision in the dissolution proceeding was rendered. The purchaser had that right because he was not in default, had

tendered performance and at that point the closing date was for his benefit, not that of the seller. Therefore, the purchaser is entitled to specific performance of the earnest money agreement.

Accordingly, I would reverse the summary judgment entered for the defendant below, and would remand the proceedings for the entry of a summary judgment in plaintiff's favor. Remanding the case for trial is a disservice to the parties and the trial court. The parties have told us they have made their record and that there is no issue as to a material fact. What are they to do on remand? What is the trial judge to do? Granted that this proceeding is in equity and we might bring into play the equitable maxim, "If a bird won't sing, make it sing"—what shall we make him sing?