Argued and submitted September 10, 1981, reversed and remanded
for new trial February 2, reconsideration denied March 11,
petition for review denied April 20, 1982 (292 Or 863)

## ESTATE OF IZOLA O'KEEFFE et al,
### *Respondents,*
*v.*
## SAFECO INSURANCE COMPANY
## OF AMERICA,
### *Appellant.*

### (No. A7709-13483, CA 18424)

639 P2d 1312

Ridgway K. Foley, Jr., Portland, argued the cause for appellant. With him on the briefs were Carrell F. Bradley, Schwenn, Bradley, Batchelor & Brisbee, Hillsboro, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Robert K. Udziela, Portland, argued the cause for respondents. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Before Buttler, Presiding Judge, Warden, Judge, and Holman, Senior Judge.*

HOLMAN, S. J.

---

* Holman, S. J., *vice* Warren, J.

## HOLMAN, S. J.

This is a negligence action brought by the estate of an insured against the insured's liability insurance carrier to recover damages for the alleged failure of defendant (Company) properly to investigate and prepare to defend a claim for damages arising out of an automobile accident. Company appeals from a judgment for plaintiff which was entered pursuant to a jury verdict.

The policy of liability insurance issued to the insured had limits of $10,000 for injury or death to any one person and $20,000 total coverage for all bodily injuries or deaths arising out of any one accident. The insured left an estate in excess of $300,000. The claims of third parties against the insured were settled for $250,000, including the $20,000 policy limits. The balance above the policy limits came from the estate.

The insured was a 69-year-old woman. She was driving north on the Klamath Falls-Bend Highway, when she was observed by the operator of a following car to drift gradually to the right across the fog line until the two right-hand wheels of her car were on the sloping shoulder of the road. Thereafter, the car "came back to the pavement in a sharp left-hand turn" and across it, where it was involved in a head-on collision with a southbound car. The collision occurred in the center of the southbound lane. The other car was occupied by a Mr. and Mrs. Ferrick. The insured and Mrs. Ferrick were dead at the scene of the accident. Mr. Ferrick was severely injured and had no memory of the accident. The only witnesses concerning how the accident occurred were the operator of the following car and the investigating police officer.

The operator of the following car testified that the insured had overtaken him shortly before the accident and, after doing so, had returned to the northbound lane. He followed her for some distance and then observed the conduct previously recited. He said she was sitting in her car in a straight, upright position until the car came back from the shoulder to the paved portion of the highway, when "she leaned approximately a foot and a half to the right after that." He observed no effort on her part to straighten out her car after coming back on the highway from the

shoulder. The insured's brake lights did not go on at any time. The distance from where her car came back fully upon the highway to the point of collision on the other side of the highway was 114 feet. After the witness stopped his car and approached the insured's car, he observed that "[s]he was kind of reared back in the seat and having some kind of seizure or convulsion. She was grabbing at her chest and going through unnormal [sic] motions." The police officer testified the tire marks made by the insured's car, after coming back upon the paved portion of the road, were of the kind that are commonly made by one which has a partially sidewise or swaying motion.

The insured suffered multiple traumatic skull fractures, including fractures of all of her skull bones, frontal and temporal; she had a flail neck, which was indicative of multiple fractures of the neck, and she had multiple crushed ribs and ruptures of some large organs with massive internal bleeding. A blood alcohol test was taken and was negative. No autopsy was performed. She was not known to have any chronic health problems. She had in the car with her two small poodle dogs, who were found crushed under the dashboard.

This case appears to be one of first impression. While there are many Oregon cases which concern claims of failure to settle within the policy limits and some concerning failure to defend, this is the first case of which we know which concerns failure properly to prepare to defend after the defense has been undertaken. Company originally raised the issue of whether the cause of action should have been brought in contract, rather than in tort, but the contention was subsequently abandoned.

Company charges error in the trial court's failure to grant a directed verdict in its favor or, in the alternative, to strike one or more of plaintiff's specifications of negligence on the basis that plaintiff failed to prove negligence and causation. The claims of negligence were substantially as follows:

(1) Failure to have an autopsy performed upon the insured to determine whether she had sustained a cardio-vascular incident rendering her unconscious or dead prior to the collision; and

(2) failure to timely undertake proper discovery procedures by

(a) failing to take the deposition of Mr. Ferrick;

(b) failure to obtain Mr. Ferrick's medical records;

(c) failure to obtain Mr. and Mrs. Ferrick's financial records;

(d) failure to take the deposition of Mr. Ferrick's doctors; and

(e) failure to secure adequate medical consultation for the benefit of decedent's estate.

■ The insurance policy provided that Company:

" *** shall defend any suit alleging such damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but SAFECO may make such investigation and settlement of any claim or suit as it deems expedient."

Company's duty to defendant includes the duty to investigate properly and to prepare the case for trial or settlement. This duty is owed to the insured over and beyond the policy limits of coverage and is without limitation. The accident occurred in July, 1975. The actions for the Ferricks requesting a total of $2,000,000 damages were commenced in February, 1976. An attorney retained by Company entered a defense for the insured's estate, and no separate counsel was obtained by the estate and the heirs to represent their interests in the action until the latter part of November, 1976, at which time the trial had already been set for January, 1977. The estate's lawyer then undertook to examine the situation and discovered ample evidence from which the jury could have found that the matter had neither been investigated nor prepared for trial as if it were of major consequence but, rather, as one which involved $20,000, of which there was no chance of salvage by Company. There was, therefore, adequate evidence of Company's negligence.

■ Whether the negligence specified in the complaint could have caused the estate to pay more in settlement than would have been necessary is the principal question in this

case. Company first contends that the trial court erred in submitting to the jury the issue concerning the failure to secure an autopsy. It argues that there was insufficient evidence from which the jury could conclude that, had an autopsy been performed, it would have found that the insured was unconscious or dead at the time of the accident and, therefore, that there could have been a lesser sum of money required to settle the case.

The estate's lawyer, who had much defense experience, testified that, in the exercise of the care which an insurer owes to an insured, an autopsy should have been performed.[1] He also testified that investigation of the facts of the accident led him to believe that, had an autopsy been performed, it was likely that the insured would have been found to have been unconscious or dead at the time of the accident. However, the only facts known were those disclosed by the eyewitness and the investigating police officer, as previously set forth, which are insufficent to justify such a finding. Embroider those facts as one may, the chance that decedent inadvertently ran off the paved portion of the highway and over-corrected in coming back upon it is just as probable than that she lapsed into unconsciousness before the collision. There was no evidence to support the speculation that an autopsy would have reduced potential exposure; therefore, it was error to submit the specification of negligence to the jury concerning the lack of an autopsy.

At the request of the estate's attorney, the trial date was postponed until May 10, 1977. The evidence would justify the finding that the estate's lawyer attempted cooperation with the lawyer retained by Company in an effort to get depositions in Sacramento, California, of Mr. Ferrick and his then treating doctor. No depositions had ever been taken of anyone. This cooperation did not bear fruit. The estate's lawyer finally made the arrangements himself and, on April 17th and 18th, about three weeks before trial, took the depositions of Mr. Ferrick and his one available treating physicians. The estate's lawyer testified as follows:

---

[1] Because of the manner of disposition of this assignment of error, it is unnecessary to decide whether failure to secure an autopsy could constitute negligence.

"A Yes. As a result of those depositions, we learned first, that we — we learned that substantially all of the complaints that Mr. Ferrick was making in the pleadings — well, that his brain injuries and his heart problems and other problems, might not be related to his accident at all. We couldn't be sure from that deposition, but it became apparent that there was a serious question as to whether those things were ever related to this accident.

"We also learned that Mr. Ferrick's loss of work and other problems were substantially exaggerated. We also learned that he actually misstated things on his deposition about his condition and his prior consumption of alcohol.

" * * * * *

"Well, after the depositions, it became apparent that considerable more investigation was necessary. It was necessary to take or at least it would have been advisable to take an additional deposition of some of Mr. Ferrick's doctors. It became apparent that a number of the things that he told us in his deposition weren't correct. We needed a background investigation on him. He had a history of litigation, including an assault and battery case. He had a history of some unknown activities in Nevada, all of which related to this very substantial claim that he was making for loss of wages as a result of this accident. So, we tried to increase our efforts to obtain investigation background on him.

"Mr. Kosta at that time helped me with that — got a named investigator — the insurance company to name an investigator. Mr. Kosta tried to obtain additional medical information on his background, which because of the time shortage, he was unable to do so. At that time, it was really too late to do much additional.

" * * * * *

"Q Did you ever really get, though, a finalized medical opinion on the nature of the extent of the problems shown by this file, as to what was caused by the accident, and perhaps what was not caused by the, at least, in whole, by the accident?

"A No. We did not."

■ It is our conclusion that the information that was secured by the estate's attorney when he took the depositions was a sufficient basis for the jury to draw the conclusion that it was probable that, had time permitted further investigation and marshaling of information, the estate would have been in a better position to make a

settlement. Within a short time after the accident, Mr. Ferrick had been airlifted from the Bend Hospital to Eugene, where better facilities existed for his treatment. This was prior to the time of his return to California and his treatment there. None of the Eugene doctors were deposed, nor his treatment there investigated. There were notes in the medical records which the estate's attorney secured in California from which the jury could have found that it was probable, had time permitted depositions and investigations of his treatment in Eugene, that information would have been secured concerning certain aspects of Mr. Ferrick's treatment which would have put the estate in a better position to settle, because many of Mr. Ferrick's difficulties had not arisen from the accident. We conclude that most, if not all, of the additional allegations of negligence were properly submitted to the jury.

■ Company also contends that the trial court erred in instructing the jury that Company "has the absolute right to control the investigation, the defense, and the settlement of all claims brought against the insured." The instruction was improper under the circumstances of this case if left unqualified. It could have been understood by the jury to mean that Company had the right to dictate how much the estate should pay in settlement of the case after Company offered its policy limits. This provision of the policy is, of course, for the protection of the company in making settlement. After it offers its policy limits, which it did, it has no interest in how the estate thereafter protects itself and no right to dictate a settlement to it. The jury was adequately instructed when it was told:

> " * * * the responsibility to exercise reasonable care and to treat the interests of its insured as carefully as it would its own interests. In effect, the law requires the insurance company, such as this defendant, to treat the matter as if there were no policy limits, and as if any loss would be the sole responsibility of the insurance company."

■ Company additionally charges as error the trial court's exclusion of evidence that the insured had been urged by her insurance agent to raise the limits of her policy and had specifically declined. This information is obviously irrelevant to any issue in the case, and no error was committed.

There was a second cause of action in plaintiff's complaint which requested reimbursement for the expense of investigation made by the estate's attorney after he became involved in the case. There was evidence from which it could have been found that this investigation was necessary to a proper defense and had not been performed by Company as required by its policy. If so, Company was responsible for this expense under the terms of its policy.

Reversed and remanded for a new trial.