Argued and submitted April 13, resubmitted In Banc September 9,
affirmed September 21, reconsideration denied November 4,
petition for review allowed December 28, 1983 (296 Or 236)
See 297 Or 783, 687 P2d 1083 (1984)

# JAQUITH,
*Appellant,*

*v.*

# FERRIS et al,
*Respondents.*

## (127,826; A26070)

669 P2d 334

Michael C. McClinton, Salem, argued the cause for appellant. With him on the briefs was Clark, Marsh, Lindauer, McClinton & Vollmar, Salem.

J. Michael Alexander, Salem, argued the cause for respondents. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

RICHARDSON, J.

Newman, J., dissenting.

## RICHARDSON, J.

Plaintiff appeals a judgment for defendants entered after the court granted their motion to dismiss plaintiff's complaint for negligence, fraud, breach of contract and unlawful trade practices. The motion was granted on the basis that the claims were barred by the relevant statutes of limitation.

According to plaintiff's complaint, she signed a listing agreement with defendant real estate broker to sell a parcel of real property. Defendants represented to her that the fair market value of the property was $164,325 and, relying on that advice, she signed an earnest money agreement tendered by Ron Jones & Co. (Jones). She subsequently learned that the market value of the property was approximately $400,000, and she declined to complete the sale. Jones filed a complaint seeking specific performance of the earnest money agreement, and that case was ultimately decided in favor of Jones. *Jones v. Jaquith,* 46 Or App 671, 612 P2d 770, *rev den* 289 Or 677 (1980). Pursuant to the decree, she conveyed the property to Jones for $164,325 and subsequently filed the complaint which is the subject of this appeal.

The time sequence pleaded by plaintiff was:

| | |
|---|---|
| 12/19/77 | Listing agreement between plaintiff and defendants. |
| 1/25/78 | Earnest money agreement executed on defendants' advice between plaintiff and Jones for sale of property for $164,325. |
| 5/19/78 | Plaintiff discovers actual market value of property was over $400,000 and declines to proceed with transaction with Jones. |
| 7/26/78 | Jones sues plaintiff for specific performance. |
| 3/23/79 | Summary judgment in trial court in plaintiff's favor rescinding earnest money agreement. |
| 2/25/80 | Court of Appeals reverses and remands summary judgment for plaintiff, finding an issue of material fact to be tried. |
| 6/23/80 | Court of Appeals, in banc, awards summary judgment to Jones. |
| 9/23/80 | Supreme Court denies plaintiff's petition for review. |

4/7/81      Plaintiff conveys property to Jones for $164.325.

7/15/81     Plaintiff files complaint against defendants for negligence, fraud, breach of contract and unlawful trade practices.

Plaintiff argues that she did not suffer harm from defendants' fraud or negligence until the Supreme Court denied her petition for review in *Jones v. Jaquith, supra,* which was within one year of the filing of her complaint in this action. She asserts that she did not know with certainty before that time that she had to sell the property to Jones for approximately $235,000 less than its market value.

The decisive issue is when the causes of action accrued, because that is when the time limitation period begins to run. The limitation period for the negligence of the real estate brokers and for fraud is two years. ORS 12.110(1). *Lindemeier v. Walker,* 272 Or 682, 538 P2d 1266 (1975); *Melgard v. Hanna,* 45 Or App 133, 607 P2d 795 (1980). The contract claim is also governed by the same limitation period as for negligence. The real estate listing agreement did not spell out affirmative duties of care other than a general standard of skill. Accordingly, it is essentially a negligence claim. *See Securities Intermountain, Inc. v. Sunset Fuel,* 289 Or 243, 611 P2d 1158 (1980). Actions under the Unlawful Trade Practices Act "shall be commenced within one year from the discovery of the unlawful * * * practice." ORS 646.638(5). Because we conclude that the separate claims accrued on May 19, 1978, it is unnecessary to discuss the claims separately.

Suffice it to say that plaintiff discovered the basis for her fraud and unlawful trade practices claims when she learned in May, 1978, that the actual market value of the property was $400,000. In reliance on this allegedly fraudulent information plaintiff had signed an earnest money agreement and had become bound to transfer her property at a substantial loss.

The period of limitation for a negligence action begins to run when harm occurs, it appears reasonably probable that the harm was caused by the negligence of defendants and the negligence was or should have been discovered. *U. S. Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976); *St. Paul Fire & Marine Ins. v. Speerstra,* 63 Or App 533, 666 P2d 255 (1983).

All of these requirements were met, and plaintiff's causes of action accrued at the latest by May 19, 1978. Plaintiff, however, argues that, even though she was bound by the earnest money agreement and had discovered the basis of her causes of action, she suffered no harm until the appellate process finally determined her obligation to perform the agreement. Her apparent theory is that her damages, and therefore her harm, were not ascertainable until the status of the earnest money agreement was finally determined. Although the extent of her damages may have been influenced by a later event, actual harm and its cause were determined when she discovered the negligence and fraud of defendants.

The case is materially distinguishible from *U. S. Nat'l Bank v. Davies, supra,* cited by plaintiff in support of her contention. In *Davies,* the attorneys had advised plaintiff's decedent in 1967, in connection with a sale of stock of a corporation, to accept trust funds of the corporation in payment. The payment was unlawful, because it violated the decedent's statutory duties. In August, 1971, the corporation sued the decedent, alleging that the use of the trust fund was unlawful. In May, 1973, the lawsuit was settled by payment from the decedent to the corporate plaintiff. In November, 1974, the decedent sued his former attorneys for malpractice to recover the settlement amount and the costs of defending the prior lawsuit. The defendants demurred on the ground that the two-year statute of limitation had run.

The dispositive question approached by the court was when the harm *caused* by the attorney defendants' bad advice was discoverable. The court said:

> "* * * There is no doubt that decedent's necessity to defend the action caused him damage more than two years prior to the commencement of the present action. It is not so clear, however, that at that time it could yet be determined that his expense of defense *was caused by* negligent advice by defendants. In many situations the closeness of the legal questions involved would make it impossible to ascertain until the ultimate determination of the case whether it was brought as the result of the attorney's bad advice or whether it was the result of a misapprehension on the part of the party who sued as to his legal rights. In the present instance, if decedent had won the case brought against him, he would not normally be in a

position to claim that negligent advice on the part of the present defendants was a cause of his expense of defense." 274 Or at 668-69. (Emphasis in original.)

The filing of the prior lawsuit against the decedent did not demonstrate as a matter of law that his harm — the cost of defense — was caused by the negligent legal advice. The causal link had to be established as a matter of fact.

Having held that the cause of action was not barred because, as a matter of law, it did not accrue when the prior lawsuit was filed, the court discussed, in dicta, the wisdom of filing provisional lawsuits. The court noted that the decedent could have filed a malpractice action against his former attorneys at the time the other action was filed against him as a precautionary measure in the event it subsequently appeared that the necessity to defend the other action was caused by negligent advice from his attorneys. The court concluded that it would be unwise to encourage such an action, because the decedent would be placed in the position of defending one action claiming that he acted lawfully while prosecuting a malpractice claim contending that he had acted pursuant to faulty advice as to the law. Such inconsistent positions would subject him to impeachment in either cause of action. The court concluded that common sense dictated that the later event, *i.e.,* determination of the causal connection between the bad advice and the decedent's damage, should take place before the statute commences to run. The wisdom or lack of wisdom of encouraging provisional lawsuits was not an independent basis for the court's decision.

In the case under review there is no question but that plaintiff suffered some harm when she signed the earnest money receipt and became obligated to transfer her property for much less than the true market value. There is also no question but that she discovered defendants' negligent or fraudulent conduct and its causal relationship to her harm in May, 1978. The later event, which she contends extends the running of the statute, had no effect on ascertainment of negligence, existence of harm or the cause of the harm. She defended the claim for specific performance on the ground that the agreement was unenforceable because the sale had not closed on a particular date. Her asserted ground had no relationship to the negligent or fraudulent conduct of defendants.

Resolution of the specific performance suit was not necessary to determine any element of her causes of action against defendants. The extent of her damages may have been influenced by the outcome of that suit, but that is not a basis for extending the limitation period.

At the time she discovered defendants' negligence and the resulting harm, she could have commenced the action that she later filed. She, however, adopted the tactic of claiming Jones had breached the agreement. She was subsequently sued by Jones for specific performance, and she defended on the basis of events that occurred subsequent to the date when she signed the agreement to sell the property, *i.e.,* failure to close the transaction by a date allegedly specified in the agreement. Had she filed the action against defendants within the limitation period, it would not have been a provisional action as described in *Davies.* She would have known of all the relevant elements of her actions and, if the full extent of her damages were unknown, she could have requested a stay in order to await the outcome of the specific performance suit. This case is materially different from *Davies,* where ascertainment of one necessary element, *i.e.,* causation, had to await the outcome of a future event.

Affirmed.

**NEWMAN, J.,** dissenting.

I respectfully dissent from the majority opinion with respect to plaintiff's claims for negligence and fraud against defendant realtors. The majority holds that the statute of limitations on the negligence and fraud claims commenced to run on May 19, 1978. I would hold that the statute of limitations on those claims commenced to run on June 23, 1980, the date of the second Court of Appeals decision. That date is within two years of the date plaintiff filed this action.

On June 23, 1980, the Court of Appeals reversed the trial court's summary judgment for plaintiff as the defendant in Jones's specific performance suit against her, held plaintiff was bound by the earnest money agreement with Jones and granted Jones a summary judgment. Until that date, plaintiff's harm was "provisional," even though she had discovered defendants' negligence and fraud by May 19, 1978. If she had continued to defend successfully against Jones' suit, she would

have had no obligation to Jones and would not have suffered harm as a result of defendants' actions. I do not agree with the majority that "the actual harm" plaintiff suffered was determined by May 19, 1978.

Plaintiff defended against Jones' suit on the ground that the earnest money receipt was void, because the sale closing did not occur on May 1, 1978. *See Jones v. Jaquith,* 46 Or App 671, 612 P2d 770, *rev den* 289 Or 677 (1980), *former opinion* 44 Or App 727, 606 P2d 1179 (1980). The trial court in Jones' suit agreed with plaintiff here and granted her a summary judgment. Although plaintiff's defense against Jones' suit was not clearly inconsistent with her claims against defendants for negligence and fraud, nonetheless, if plaintiff had sued defendants prior to June 23, 1980, they would have argued in defense that the harm suffered by plaintiff was provisional. Defendants would have raised the substantial defense that plaintiff had not yet suffered harm as a result of their alleged negligence or fraud.

In *U. S. Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976), the court held that the plaintiff's cause of action for malpractice did not accrue until the lawsuit against the plaintiff's decedent was settled, that prior to the settlement the plaintiff's cause of action against the attorney was only "provisional" and that it was not wise to encourage the filing of "provisional" actions. Had such an action been filed, the plaintiff's decedent would have defended against one suit, claiming that he had acted in conformity with law, while simultaneously maintaining an action against the defendants, claiming that because of his lawyer's advice he had not acted in conformity with the law. The court stated that "[s]uch an inconsistent position would have given rise to impeachment of decedent in his defense of the action brought against him, which certainly is not desirable from either of the present parties' point of view." 274 Or at 670. The court then stated:

> "This is one of those situations in which common sense dictates that a 'later event' (the appearance of decedent's probable liability) should take place before the statute commences to run. * * *" 274 Or at 670.

It is not a common sense application of the statutes of limitation to require plaintiff to bring her action against defendants as early as the majority holds. The majority recognizes

the artificiality of its position by stating that, if plaintiff had filed her action within the limitation period the majority finds applicable "and if the full extent of her damages were unknown, she could have requested a stay in order to await the outcome of the specific performance suit." The majority does not attempt to describe the confusing legal situation which would have resulted. As in *U. S. Nat'l Bank v. Davies, supra,* this is a situation in which common sense dictates that a later event (the appearance of plaintiff's probable liability to Jones as a result of the decision of this court on June 23, 1980) should take place before the statutes of limitation on the negligence and fraud claims commence to run.

Gillette, Warden and Rossman, JJ., join in this dissent.