Argued and submitted April 6, resubmitted In Banc December 11, 1984, judgment affirmed on appeal; on cross-appeal, remanded with instructions and affirmed November 14, 1985, Bollam's reconsideration and Fireman's Fund Ins. Co.'s reconsideration denied January 10, both petitions for review allowed February 11, 1986

(300 Or 545)

See later issue Oregon Reports

# BOLLAM et al,
*Respondents - Cross-Appellants,*

*v.*

# FIREMAN'S FUND INSURANCE COMPANY,
*Appellant - Cross-Respondent.*

## (A8004-02314; A27608)

709 P2d 1095

In Banc

Gary V. Abbott, Portland, argued the cause for appellant - cross-respondent. With him on the briefs were Hallmark, Griffith & Keating, Portland.

Stephen R. Frank, Portland, argued the cause for respondents - cross-appellants. With him on the briefs was Montgomery W. Cobb and Tooze, Kerr, Marshall & Shenker, Portland.

GILLETTE, J.

Warren, J., concurring.

Buttler, J., dissenting.

## GILLETTE, J.

This is a negligence action brought by plaintiffs to recover damages caused by their insurance company's alleged failure properly to handle a claim, thereby exposing them to excess liability. Defendant appeals from a judgment for plaintiffs. Plaintiffs cross-appeal. We affirm.

The pertinent facts are that, plaintiffs were driving northbound on Interstate 5 in Washington on January 23, 1975. It was raining heavily. A passing truck splashed plaintiff's car with water, obscuring Mr. Bollam's view. As a result, he crossed the center median and hit a southbound car driven by Russel Ruhle, who suffered back injuries and later required a spinal fusion. Plaintiffs' liability for the accident was reasonably clear.

On January 31, 1975, defendant, as plaintiffs' insurance company, began making advance payments to Ruhle in the amount of $400 a week in addition to payments for his medical expenses. The payments continued until July, 1976, when approximately $48,000 of the Bollams' $100,000 policy limit had been expended.

In July, 1976, plaintiffs, on defendant's advice, retained their own attorney to evaluate the Ruhle claim. Subsequently, defendant offered Ruhle the balance of the policy limits in settlement of his claim. Ruhle's reponse was to bring an action against plaintiffs. The case was settled before trial for $135,000, with defendant paying Ruhle the balance of the policy limits and plaintiffs paying him $35,000 of their own funds on June 29, 1979.

Plaintiffs then commenced this action, alleging that defendant was negligent in making advance payments to Ruhle, because those payments kept him from settling within the $100,000 policy limits. Plaintiffs claimed damages of $38,271, consisting of the $35,000 that they had to pay in excess liability and $3,271 for defense expenses, in the form of attorney fees, incurred in connection with the Ruhle claim. The jury returned a verdict for plaintiffs.[1] This appeal followed.

---

[1] The parties stipulated that the jury would determine only whether plaintiffs were entitled to recover with respect to the amount they paid in excess liability and that, following the verdict, the court would decide whether they were entitled to recover any part of the $3,271 incurred as defense expenses.

Defendant, in its first assignment of error, contends that the trial court erred by denying its motion for a directed verdict or, in the alternative, to strike one or more of plaintiffs' specifications of negligence.[2] Its argument on this assignment of error—resembling, at some points, a scream of frustration—is not a model of clarity. Defendant appears to argue only that, because ORS 746.230(1)(f) requires it to attempt in good faith promptly and equitably to settle claims in which liability has become reasonably clear, making advance payments in an attempt to discharge its statutory duty cannot, as a matter of law, constitute actionable negligence.

ORS 746.230(1)(f) imposes on insurers an obligation to attempt, "in good faith, to promptly and equitably settle claims in which liability has become reasonably clear * * *." Defendant seems to contend that, because it was under a statutory duty to make advance payments, it would be anomalous to say that, in fulfilling that statutory duty, it could nonetheless incur tortious liability to its insured. We think, however, that the existence of such a duty cannot, *per se,* serve as a defense to an allegation that an insurance company has negligently handled a claim. The fact that an insurance company may have a duty promptly and equitably to settle with an injured third party does not necessarily preclude the possibility that in doing so it has acted negligently toward its own insured. By way of illustration, one need only consider a situation in which, two days after an accident in which liability is reasonably clear, an insurance company in the position of defendant in this case tenders a check for its policy limits without obtaining a release.

We do not suggest that a defendant's good faith compliance with ORS 746.230 is not enough. We assume it is enough. We merely point out that, in this case, plaintiffs' evidence—including that of two experts—put defendant's good faith in issue. There is no suggestion that the jury instructions were inadequate. Although we might and, indeed,

---

[2] Defendant also assigns as error the trial court's denial of its motion for summary judgment. Denial of a motion for summary judgment is not reviewable on appeal, when the case thereafter went to trial.

probably would, have decided this case the other way, defendant has failed to demonstrate that the trial court erred in sending it to the jury.

There is an alternative way of looking at the problem. One is hard put, in this record, to find any affirmative evidence that Ruhle would ever have accepted $100,000 in settlement. One could fairly argue, therefore, that no negligence of the insurance company caused any damage to plaintiff. That issue was raised in defendant's motion for directed verdict at the close of plaintiff's case, but it was not repeated at the close of all the evidence nor argued on appeal. It is therefore not before us. Instead, the case was submitted to a jury with this instruction:

> "The plaintiffs alleged that the defendant is negligent in the manner in which it handled this claim in one particular, and this is all you're to consider in this case. The claim is that the defendant was negligent in making advance payment when it knew or in the exercise of reasonable care should have known that to do so would preclude settlement of the Ruhles' claim within their policy limits."

If the making of the advance payment were all that was involved, we might agree with defendant that there was no cognizable claim—that is all defendant asserts on appeal. Obviously, any advance payment would tend to preclude settlement within the policy limits, because there would be less "new money" available to settle the claim. A plaintiff should not be able to whipsaw an insurance company between ORS 746.230, on the one hand, and, on the other hand, a claim that any advance payment can, in and of itself, be negligence.

This case, however, involves more. There was evidence that, early in the claims handling process, defendant knew that the claim's value exceeded the policy limits and that liability was clear. (The insurer's own attorney had concluded that the chance of defending successfully on liability was less than one in ten.) Plaintiffs tried this case on a theory that defendant had a duty to attempt to settle the whole claim once damages were known to exceed policy limits and liability was clear. The negligence under that theory was in failing promptly to tender the limits and in stringing the claim out until too little was left to buy peace for the insured.

Defendant did not object to evidence of that kind and,

in fact, evidence from its own witnesses supported that theory. That theory is, we think, viable and consistent with the policy of ORS 746.230(1)(f), imposing on the insurer an affirmative obligation to initiate settlement. It is also a theory that is not clearly outside the pleadings. The trial court did not err in submitting the case to the jury, at least as against any theory of error advanced here.

Defendant next contends that the trial court erred in striking its Statute of Limitations defense. In a negligence action, the period of limitation begins to run when three requirements are met: (1) the harm has occurred, (2) it appears reasonably probable that the harm was caused by defendant's negligence and (3) the negligence was or should have been discovered. *U.S. Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976); *Jaquith v. Ferris,* 64 Or App 508, 669 P2d 334 (1983), *aff'd* 297 Or 783, 687 P2d 1083 (1984). The focus in this case is on the first requirement: When did the harm occur? The trial court found that the Bollams were harmed on June 29, 1979, the date when they paid Ruhle the $35,000 in excess liability. Defendant asserts that the harm occurred earlier, when the plaintiffs retained their own attorney and incurred attorney fees. This contention is easy to answer as a practical matter, but it is much tougher in view of the paucity of precedent.

As a practical matter, plaintiffs were entitled—even obliged—to retain counsel with respect to potential liability to Ruhle because the policy limits might not satisfy his damages. Because this is a different concern from suing defendant, the act of doing so does not carry with it Statute of Limitations implications.

We also find this analysis to be the correct one in light of the precedents. In *U.S. Nat'l Bank v. Davies, supra,* 274 Or at 669, the Supreme Court quoted, with approval, the following passage from "Developments in the Law: Statutes of Limitations," 63 Harv L Rev 1177, 1200 (1950):

> "Although prima facie it seems just to compute the time limitation on the plaintiff's remedy from the time when a suit could have been maintained, the considerations which determine the factual components to be pleaded and proved by the plaintiff do not themselves necessarily fix appropriate time limitations for the initiation of an action. It is not surprising,

therefore, that the courts have not always literally carried out the directive that the period begin when the cause of action accrues. The commencement of the statutory period has occasionally been delayed, despite the existence of a theoretical right to recovery, until the occurrence of some later event the absence of which made suit impossible or improbable: for example, until the plaintiff learned of the wrong or until substantial damage occurred." (Footnotes omitted.)

■ Although, theoretically, plaintiffs' incurrence of attorney fees caused them damage more than two years before the filing of this action, we hold that the Statute of Limitations did not begin to run at least until the date when Ruhle's case against plaintiffs was settled and they paid Ruhle the $35,000 excess liability. In our view, this is a case in which practicality and legality meet: the incurrence of attorney fees to guard against the possibility of future harm does not constitute damage sufficient to start the running of the statutory period. Until the Ruhle claim was settled for $35,000 over the policy limits, plaintiffs' exposure to excess liability was merely a possibility. Had the claim been settled within the policy limits, their concern would have vanished. We, therefore, hold that, under these facts, the commencement of the statutory period was delayed until plaintiffs suffered substantial, palpable damage, *i.e.*, excess liability. To hold otherwise would result in an anomolous situation in which plaintiffs would have been required to have initated an action in anticipation of a loss that might never have materialized. Such provisional actions were expressly disapproved in *U.S. Nat'l Bank v. Davies, supra,* 274 Or at 670.[3]

Defendant next contends that it was error for the trial court to award as damages the attorney fees incurred by plaintiffs in connection with the Ruhle claim. Defendant does not dispute that, in some situations, defense fees incurred by an insured party may be recovered from its insurer. *See, e.g., O'Keeffe v. Safeco Insurance Company,* 55 Or App 811, 639 P2d 1312, *rev den* 292 Or 863 (1982); *Hoage v. Westlund,* 43 Or

---

[3] The dissent reads *Jaquith v. Ferris, supra,* to require a contrary holding; it does not. The kind of harm suffered by the plaintiff in that case that was deemed to trigger the statute of limitations—incurrence of liability to sell property for hundreds of thousands of dollars less than it was worth—has no parallel in this case until the settlement.

App 435, 439, 602 P2d 1147 (1979) Rather, defendant takes the position, as we understand it, that there is no evidence in this record from which a trier of fact could conclude that all (or any) of the defense fees in question were incurred because of any negligent act of defendant. As an abstract proposition, defendant's point may (or may not) be well taken. However, defendant has not shown in its brief, either by a *verbatim* quotation—as provided by rule—or by a transcript citation, where it made this precise argument to the trial court. We decline to consider it. *See* ORAP 7.19; *State v. Mendenhall*, 53 Or App 174, 631 P2d 791 (1981).

We turn to the issues raised by plaintiffs on cross-appeal. First, they contend that the trial court erred in denying their request for attorney fees incurred in the trial of the present case. In support of this contention, they rely on ORS 743.114, which provides, in part:

> "If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

Defendant responds that this was a tort, not a contract action, and ORS 743.114 is, therefore, inapplicable. On this issue, this court is equally divided. The trial court is, therefore, affirmed on the issue.

As their final assignment of error, plaintiffs contend that the trial court erroneously denied their request for prejudgment interest. They contend that their damages are "liquidated" and, therefore, that they are entitled to interest from the time the amounts became due under ORS 82.010(2)(a). Defendant, on the other hand, maintains that plaintiffs' damages are "unliquidated" and prejudgment interest is, therefore, inappropriate. Defendant further argues that prejudgment interest should not be awarded in a tort action.

Traditionally, a liquidated claim has been defined as one in which "defendant's obligation is a fixed sum, such as the face amount of an insurance policy or the principal due on

a note." Dobbs, *Remedies* 166 (1973). Because plaintiffs' damages are based on an amount paid in excess of an insurance policy, we do not find that the damages were "liquidated" in the traditional sense. However, we do not agree with defendant's conclusion that, because the damages are not liquidated, prejudgment interest is necessarily precluded. Even though the damages may be unliquidated, they may be ascertained or easily ascertainable. In *Public Market Co. v. Portland,* 171 Or 522, 130 P2d 624, 138 P2d 916 (1943), the Supreme Court held that, in a breach of contract action, prejudgment interest is proper, not only when the damages are liquidated, but also when the damages, although unliquidated, are ascertained or easily ascertainable. Whether this same rule is applicable to tort actions appears to be an open question in Oregon. The only case which addresses the issue at all is *Calcagno v. Holcomb,* 181 Or 603, 185 P2d 251 (1947), a case brought to recover damages for destruction of growing crops. The court stated:

> "Inasmuch as there was a dispute as to whether defendant damaged some of plaintiff's potatoes prior to March 1, 1944, the court properly submitted that matter to the jury. Such damages, if any, would be unliquidated and would be due to the tortious act of the defendant. For that reason plaintiff would not be entitled to any interest thereon prior to judgment. The rule laid down in *Public Market Co. v. Portland* * * * was never intended to apply to tort actions for unliquidated damages." 181 Or at 613. (Citations omitted.)

Defendant argues that this statement precludes the recovery of prejudgment interest in all tort cases where the damages are unliquidated, whether ascertainable or not. We think defendant reads *Calcagno* too broadly. In our view, the court in *Calcagno* was merely restating the general rule that prejudgment interest is not available in most tort actions because the damages are usually unascertainable until judgment is entered. We do not read *Calcagno* to say that prejudgment interest is never appropriate in tort actions for unliquidated damages.

Although tort claims are generally "unliquidated" in the sense that the precise amount a defendant is obligated to pay is not known until judgment is entered, that is not the case here. Contrary to defendant's assertion, this case went to the jury on the theory that, if defendant were found liable, its

liability would be $35,000—the amount plaintiffs were required to pay over the $100,000 policy limit. That theory was clearly expressed in a jury instruction to which defendant made no exception concerning the extent of damages.[4]

> "Now, if you find from the evidence and the instructions that the plaintiff is entitled to prevail, *then the plaintiff is entitled to recover the amount of the settlement which was in excess of the limits of the insurance policy.* If you find that the defendant was negligent in the management of the claim of Mr. Ruhle against the plaintiff, then your verdict will be in the amount of damages suffered by plaintiffs." (Emphasis supplied.)

Considering that instruction, defendant's contention that the damages are "unliquidated," because the jury could have returned a verdict for less than $35,000, is simply wrong. The jury, having found liability, had no alternative under the instruction but to return a verdict for $35,000. Thus, although the damages were not, in the form plaintiffs sought them, "liquidated" in the traditional sense, they were at the very least ascertained or ascertainable in view of the way the case was tried.

■■ The Oregon courts have routinely allowed prejudgment interest on liquidated damages in breach of contract actions. *See, e.g., Dale's Sand & Gravel, Inc. v. Westwood Construction,* 62 Or App 570, 661 P2d 1378, *rev den* 295 Or 259 (1983); *Papadopoulos v. Bd. of Higher Educ.,* 48 Or App 739, 617 P2d 931, *rev den* 290 Or 727, *cert den* 454 US 803 (1980). Although this action was brought in tort, we do not see that as an essential distinction. It is the character of the damages, not of the cause of action, that is the determinative factor in awarding prejudgment interest. *See Arizona Title Insurance & T. Co. v. O'Malley Lbr. Co.,* 14 Ariz App 486, 484 P2d 639 (1971). Because plaintiffs' damages, including the $3,271 incurred as defense expenses, were for a definite sum, due at a definite time, plaintiffs were entitled to prejudgment interest.

Judgment affirmed on appeal; on cross-appeal, remanded with instructions to award prejudgment interest in accordance with this opinion; affirmed in all other respects.

---

[4] Defendant did except to this instruction on the ground that it did not sufficiently address causation. That issue was not raised on appeal.

**WARREN, J.,** concurring.

I concur in the affirmance of the appeal only because I agree with what the majority calls the "alternative way of looking at the problem." I specifically disagree with what the majority says about the correctness of the trial court's submission of the case to the jury on the primary ground discussed.

ORS 746.230(1)(f) imposes on insurers the obligation to attempt, "in good faith, to promptly and equitably settle claims in which liability has become reasonably clear."

The majority notes that plaintiffs' liability for the accident was reasonably clear. 76 Or App at 269. Being under a duty promptly and equitably to settle the claim, defendant made advance payments to compensate for Ruhle's injury. The argument inherent in the position plaintiffs take is that, had the insurer not paid in advance, the injured parties would have settled for $100,000. That argument necessarily assumes that the insurer was negligent, because by paying in advance, it acted unreasonably to cause the injured third parties to demand more than they otherwise would have accepted. That kind of claim is at least novel. To allow liability to be imposed under these facts will encourage insurers not to make advance payments in furtherance of a prompt settlement. This is clearly inconsistent with the legislative policy expressed in ORS 18.500 *et seq* and ORS 746.230. It seems strange to me that an insurer who makes advance payments, presumably to try to keep the case and the insured out of court, can be said to be at fault with respect to the insured. The argument could as easily be made that the insurer would be negligent in not making advance payments, thus forcing the case into litigation. Had this insurer paid nothing in advance but offered its $100,000 in settlement, presumably the case would turn out differently. Because the insurer paid in advance, it comes out worse than had it taken the kind of hard-nosed attitude for which insurers are often criticized. I believe that the premise of this claim, *i.e.,* negligently caused greed, is not one the law should recognize and wish to disassociate myself from any implication in the majority opinion that such a theory is viable.

Rossman and Newman, JJ., join in this concurrence.

**BUTTLER, J.,** dissenting.

I believe that the judgment must be reversed in its entirety, because the Statute of Limitations had run against plaintiffs.

The majority correctly points out that the period of limitation begins to run when three requirements are met: (1) harm has occurred, (2) it appears reasonably probable that the harm was caused by defendant's negligence, and (3) the negligence was or should have been discovered. *U.S. Nat'l Bank v. Davies,* 274 Or 663, 548 P2d 966 (1976); *Jacquith v. Ferris,* 64 Or App 508, 669 P2d 334 (1983); *aff'd* 297 Or 783, 687 P2d 1083 (1984). There is no dispute but that in July, 1976, after defendant had paid Ruhle approximately $48,000 of the policy limits, defendant advised plaintiffs to retain their own attorney to evaluate the Ruhle claim, and that they did so. There would have been no occasion for plaintiffs to have retained an attorney at that time if the Ruhle claim was not likely to exceed the $100,000 policy limits, or if there was any indication that Ruhle would settle the claim within the policy limits. In May, 1977, defendant offered Ruhle the balance (approximately $52,000) of the policy limits; the offer was rejected summarily, and Ruhle filed an action against plaintiffs within a very short time thereafter. When that action was filed, plaintiffs continued to incur attorney fees in their defense of the Ruhle lawsuit.

Plaintiffs admit that, prior to April 1, 1977, they knew that defendant had been making payments to Ruhle, and that during the latter part of June, 1977, they were advised of the exact amount that had been paid. They also knew before April 1, 1977, that Ruhle would not accept plaintiffs' policy limits of $100,000 to settle his claim.

It is clear that plaintiffs, no later than April 1, 1977, had all of the information on which they now rely in their claim against defendant, except for the amount of their damage, which was determined finally on June 29, 1979, when they paid Ruhle $35,000 in excess of their policy limits. The trial court, relying on *U.S. Nat'l Bank v. Davies, supra,* ruled that plaintiffs were not harmed until they had paid Ruhle; therefore plaintiffs' action against defendant, which was filed April 25, 1980, was not barred by the Statute of Limitations. The majority agrees; I disagree.

This court went through the same discussion in *Jacquith v. Ferris, supra,* and resolved the question contrary to the majority opinion in this case. In that case, the plaintiff had signed a listing agreement with the defendant real estate broker to sell a parcel of real property. Acting on the defendants' advice, she signed an earnest money agreement obligating her to convey the property to a third party for $164,325. Before that transaction was closed, she discovered that the property was worth $400,000 and refused to close the transaction covered by the earnest money agreement.

The buyer under the earnest money agreement filed an action for specific performance; the plaintiff counterclaimed for rescission. The trial court ruled for plaintiff on her counterclaim and this court ultimately reversed; the Supreme Court denied review. The plaintiff then conveyed the property to the purchaser and, within one year after Supreme Court review was denied, filed suit against the defendant for damages for his having negligently appraised the property.

The trial court in *Jacquith v. Ferris, supra,* held that the action was barred by the Statute of Limitations. We affirmed in banc, by a six to four vote. Like the majority in this case, the dissenters in *Jacquith,* relied on *U.S. Nat'l Bank v. Davies, supra,* in concluding that the plaintiff had not been damaged until the extent of her damage had been finally determined, that is, when she was required by this court to convey the property pursuant to the earnest money agreement. The majority, on the other hand, held that the Statute of Limitations had commenced to run when she discovered defendant's negligence and incurred the expense of defending the action for specific performance. We pointed out that the plaintiff could have filed an action against the defendants at that time, because she knew all of the relevant elements of her action and that, if the full extent of her damages were unknown, she could have requested a stay in order to await the outcome of the specific performance suit. For that reason, we said, that case was materially different from *Davies,* where ascertainment of the element of causation had to await the outcome of the action against the plaintiff.

The Supreme Court, in affirming our opinion, stated:

"* * * Plaintiff's argument that she sustained no harm until the extent of her damage was ascertained, or, in this

case, until an appellate decision finally forced her to convey the property, mixes two discrete concepts, the occurrence of harm and the extent of damages. We have stated that '[i]t is immaterial that the extent of damages could not be determined at the time of the [tort]' for purposes of determining when the statute of limitation commenced to run. *Industrial Plating Co. v. North,* 175 Or 351, 354, 153 P2d 835 (1944). * * *" 297 Or at 788.

Accordingly, it held that the Statute of Limitations commenced to run when she assumed the legal costs to resist her contractual duty to convey the property, because she knew of the defendant's negligence and incurred some harm at that time.

This case falls squarely within *Jacquith v. Ferris, supra.* It is distinguishable from *U.S. Nat'l Bank v. Davies, supra,* for the same reason that *Jacquith* was. In *Davies,* the controlling issue was when did the plaintiff become aware, or should have become aware, of the cause of his damage, not when the harm *occurred.* Because the cause of his damage, if any, could not have been determined until the prior action was terminated, the court held that the Statute of Limitations did not commence to run until that determination had been made. Here, as in *Jacquith,* the resolution of the prior action was determinative of the extent of the damages, not the cause.

If defendant's having made regular, periodic advance payments to Ruhle was negligent, plaintiffs were aware of the full extent of that negligence no later than late June, 1977. They also knew that Ruhle would not accept plaintiff's policy limits of $100,000 to settle his claim, and that they were exposed to probable excess liability. Actually, they knew of the possibility of that exposure in July, 1976, at which time they employed an attorney, incurring expenses as a result. The majority states that, because plaintiffs' hiring an attorney was for "a different concern than suing defendant, the act of doing so does not carry with it Statute of Limitation implications." 76 Or App at 272. However, that was the precise situation in *Jacquith.*

If the cause of Ruhle's refusal to accept a settlement within plaintiffs' policy limits was defendant's making advance payments to him, that was just as true in April, 1977, as it was when this action was filed in April, 1980.

Plaintiffs have been represented by the same attorney throughout this matter. There is no evidence that between April, 1977, and April, 1980, plaintiffs learned that Ruhle would have accepted $100,000 if defendant had not advanced money to him. Accordingly, if defendant's conduct was negligent, and if that negligence was the cause of plaintiffs' damage, plaintiffs knew all of that and were damages more than three years before this action was filed, and they could have filed an action against defendant. There is no reason why they could not have asserted a third-party claim in the Ruhle action. Therefore, the Statute of Limitations had run before they filed this action.

Accordingly, I would reverse and, therefore, dissent.

Joseph, C. J., joins in this dissent.