Argued May 5, reversed and remanded June 17, petition for
rehearing denied July 16, 1959

# WOOD ET UX *v.* BAKER ET UX

341 P. 2d 134

*C. Richard Neely,* of La Grande, argued the cause

for appellants. On the brief were Helm & Neely, La Grande.

*S. H. Burleigh,* of La Grande, argued the cause for respondents. On the brief were Burleigh & Carey, La Grande.

Before McALLISTER, Chief Justice, and ROSSMAN, LUSK, WARNER, CRAWFORD and MILLARD, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal from a judgment for defendants allowing their costs and disbursements notwithstanding the verdict of a jury in favor of the plaintiffs in the sum of $6,000, and further ordering the dismissal of plaintiffs' complaint rendered by the Circuit Court of Union County in a vendees' action for damages on account of fraud. The judgment was entered pursuant to a motion for judgment n.o.v. on the ground that plaintiffs had knowledge of the alleged fraud more than two years prior to the filing of the action, and the court should have allowed defendants' motions for a nonsuit and for a directed verdict for the same reason.

The action is based upon alleged fraudulent representations made by defendants and their broker in the sale of a 320-acre cattle and hay ranch in Union County to plaintiffs. The alleged misrepresentations as set forth in the complaint are as follows:

"(1) That defendants represented to plaintiffs that said land was commensurate for a United States Department of Agriculture Forest Service Grazing permit in the Wallowa-Whitman National Forest for 137 head of cattle, whereas said land is

and was commensurate for no more than 60 head of cattle.

"(2) That defendants represented to plaintiffs that irrigation water for that portion of said property irrigated always lasted through mid-August in each year, whereas such water did and does not, in truth and in fact, last through mid-August in each year.

"(3) That defendants represented to plaintiffs that there were 130 acres of irrigated grass and hay land in the property hereinabove described, whereas in truth and in fact there is not such an acreage of irrigated grass and hay land.

"(4) That defendants represented to plaintiffs that of the balance of 190 acres of pasture land a part had been seeded to crested wheat grass, tall oat grass and other grass, whereas in truth and in fact such seeding had not been made.

"(5) That defendants represented to plaintiffs that cattle could be moved onto Forest Service land under the grazing permit for which said property was commensurate between the 1st day and the 15th day of April in each year, whereas in truth and in fact cattle cannot be moved to Forest Service land prior to the 1st day of July in any year.

"(6) That defendants represented to plaintiffs that the cattle which were on the place at the time of the purchase, such cattle being fat and in good condition, had been raised on the place and had never had a bite to eat except hay from the place and pasture on the place or in the national forest, whereas in truth and in fact such cattle had been maintained on other property belonging to the defendants and fed hay purchased off the place.

"(7) That defendants represented to plaintiffs that the grass and hay land on the property hereinabove described cut about 400 tons of hay per year, whereas in truth and in fact such land would produce no more than 130 tons to 145 tons per year."

Defendants in their answer, among other things, alleged that the action was not commenced within two years after the discovery of the alleged fraud and that the same was barred by the Statute of Limitations.

It clearly appears from the evidence that most of the alleged misrepresentations were in fact made. While the complaint does not set forth the time of purchase or the time plaintiffs discovered the falsity of the representations, it appears plaintiffs entered into possession in April 1954 and operated the ranch during the years 1954, 1955 and 1956. The trial court properly found that plaintiffs discovered the falsity of specifications (1), (5) and (7) more than two years prior to the filing of the action and removed them from the jury's consideration as a basis for recovery. For example, it was represented that there was a United States Forest grazing permit for 137 head of cattle in connection with the ranch when in fact the grazing permit was issued in connection, not only with the land in question, but an additional 1200-acre tract not included in the transaction. This resulted in an eventual allowance to plaintiffs of a permit for a greatly reduced number of cattle. All this was discovered by plaintiffs in the year 1954 and more than two years prior to commencement of the action.

Defendants contend that where a part of the fraud is discovered more than two years prior to the commencement of the action, as it was in this case, this amounts to a discovery of the whole fraud and therefore the Statute of Limitations has run. This is on the theory that a new cause of action does not accrue each time a plaintiff discovers elements of fraud in a transaction, or new evidence to prove such fraud, and hence if the statute has run as to part, it has

run as to all, since a different holding would in effect allow plaintiffs to split their cause of action.

In support of this contention defendants cite *Kelly v. City of New York*, 96 NYSupp2d 156. In that case the fraud was allegedly perpetrated in 1937 but the action was not commenced until 1945, plaintiff claiming that the fraud was not discovered until then. The Statute of Limitations was six years. The court held that plaintiff knew the facts, however, more than six years prior to the commencement of the action and that when the facts are known, giving rise to the inference of fraud, there was a discovery and that a new cause "does not accrue each time a party discovers new elements of fraud." The court goes on to hold, in effect, that since plaintiff knew the facts he was then placed on notice or had knowledge, whether he comprehended it or not. While this case may be cited for the proposition that a new cause does not arise each time a new element of fraud is discovered, it does not necessarily follow that the rule against splitting causes of action is violated. The "splitting of a cause of action" consists in the commencement of an action for only a part of the cause of action. *Silber v. James Drug Stores, Inc.*, 124 NJL 401, 11 A2d 756, 758. To the same effect, see *Floyd v. C.I.T. Corporation*, 191 SC 518, 5 SE2d 299; *Scientific & Hospital Supply Corporation v. Board of Education of City of New York*, 172 NY Misc 770, 16 NYS2d 91; *Gaynon et al. v. Statum*, 151 Fla 793, 10 So2d 432; *Tuttle v. Everhot Heater Co.*, 264 Mich 60, 249 NW 417; *Van Brode Milling Co. v. Kellogg Co.*, Del DC 1953, 113 FSupp 845, 852. That of course is not the situation here. Here, all the charges of fraud are contained in the one proceeding. Here, the defendants are not required to

defend more than once. As was said in *Todd v. Central Petroleum Co.*, 155 Kan 249, 124 P2d 704, 707, " 'The doctrine against splitting a cause of action is designed for the protection of defendants and not to give them an unjust advantage. Its object is to prevent a multiplicity of suits. * * *' " Here there is no question of a multiplicity of suits and hence no violation of the rule against splitting a cause of action.

The problem with which we deal here is concerned, not with the query as to when the cause of action accrued, but to an inquiry as to when the Statute of Limitations began to run.

> "* * * The statutory provision that 'the limitation shall be deemed to commence only from discovery of the fraud or deceit,' properly interpreted, means from the time the fraud was known or could have been discovered through the exercise of reasonable diligence: * * *." *Linebaugh v. Portland Mortgage Co.*, 116 Or 1, 8, 239 P 196.

At this juncture it should be noted that defendants, prior to answering, filed a motion to require plaintiffs to make their complaint more definite and certain by setting out and alleging the date of the purchase of the ranch, which motion was overruled.

■ In *Huycke v. Latourette*, 215 Or 173, 332 P2d 606, it was held that when the complaint shows the action was not commenced within the time fixed by the Statute of Limitations, it is necessary, in order to toll the statute, to set forth the reasons why there was not an earlier discovery of the fraud or deceit. We are of the opinion that this motion should have been allowed and that the court, upon failure so to do, committed error. We do not, however, deem such

error prejudicial since the issue that would have been tendered by the complaint, had the error not been committed, was in fact tendered by the answer and tried out before the jury under appropriate instruction.

■ The fact that a person defrauded may have discovered some misrepresentations within such time that he is barred by the Statute of Limitations is certainly no reason for barring his suit on other misrepresentations later discovered, unless the discovery of the first put him on notice of the others.

In *French v. Freeman,* 191 Cal 579, 217 P 515, 519, it was pointed out that a purchaser might well decide he could put up with the first misrepresentation he discovers, but as others come to light, decide to seek relief against the vendor. While there the main issue had to do with rescission, it was held that "The rule that a person who has discovered that he has been cheated in one particular is put on inquiry as to other possible frauds must be applied with reference to all the circumstances of the case, and is, of course, a question for the trial court to determine." The decision was to the effect that in that particular case discovery of one fraud was not constructive notice of the other particulars of fraud. See, also, *Spadoni v. Maggenti,* 121 Cal App 147, 8 P2d 874, 878 (rescission) ; *Cameron v. Evans Securities Corp.,* 119 Cal App 164, 6 P2d 272, 275 (rescission). In *Wolfson v. Ocean Park Realty Corporation,* 114 Cal App 127, 299 P 579, 580, it was held that knowledge of one misrepresentation, under the circumstances, did not put purchaser on notice of another so as to bar deceit action arising out of the sale of a ball room.

■ In *Allen v. California Mutual Building & Loan Ass'n,* 22 Cal2d 474, 139 P2d 321, 328, the same rule

was followed where the Statute of Limitations was involved, although the nature of the latter misrepresentations are not set forth in the opinion. See, also, *Schillner et al. v. H. Vaughan Clarke & Co.,* (CCA2d 1943), 134 F2d 875, 878, 879, where it was held that the Statute of Limitations would be a bar as to one misrepresentation but "this would not preclude recovery on the ground of some other untruth or material commission which reasonable diligence would not have discovered before the critical date." To the same effect, see, *White v. Federal Deposit Ins. Corp.* (CCA4th 1941), 122 F2d 770, 776; contra, *Turner v. Jarboe,* 151 Kan 587, 100 P2d 675, 678 (rescission); *Logan v. Taylor,* (Tex Civ App 1938), 118 So2d 1094, 1096 (rescission). Notwithstanding there is some authority to the contrary, we hold the better rule to be that notice of one specification of fraud is not as a matter of law necessarily notice as to all, but whether it is notice or not must depend upon the facts and circumstances of each case. If there be notice of facts and circumstances in connection with the discovery of one specification of fraud which would put a man of ordinary prudence and intelligence upon inquiry as to the other items of fraud, then of course the defrauded person would be charged with such knowledge as a reasonably diligent inquiry would disclose. See, *Housley et ux. v. Linnton Plywood Ass'n,* 210 Or 520, 529, 311 P2d 432, and cases there cited.

■ Defendants further argue, in effect, that in any event it was proper for the court to grant judgment notwithstanding the verdict, since the evidence was uncontradicted, and only one inference could be drawn therefrom, that is, that plaintiffs had actual knowledge of the fraud more than two years prior to the bringing of the action, whether they comprehended

it or not. Generally, when the alleged fraud was discovered, or whether reasonable diligence was exercised by plaintiff to discover the same, are ordinarily questions for the jury, and it is only when the evidence is uncontradicted and only one inference can be reasonably drawn therefrom it becomes a question for the court to determine. *Linebaugh v. Portland Mortgage Co.,* supra, 116 Or 1, 8.

■ We have carefully reviewed the testimony and are satisfied that the trial court was correct in submitting at least some of the specifications of fraud to the jury. For example, discoverey of the falsity of representation as to United States Forest Service grazing rights would not necessarily put plaintiffs on notice as to the duration of irrigation water, acreage of grassland or hayland or the source of hay fed to cattle on the premises. There is a question as to whether knowledge of the productivity of hayland put plaintiffs on notice as to the amount of acreage devoted to that purpose. It would, for example, be equally permissible inference that a short crop resulted from the poor quality of the hay fields, whatever the acreage, or that the low water supply was the cause, since there was some testimony that there was an abnormally dry year in 1955. Furthermore, the hay fields were very irregular in dimension and it would be extremely difficult for anyone other than a surveyor to compute the acreage. In any event, we are of the opinion that the questions of notice and reasonable diligence as to the specifications submitted were for the jury. It should be pointed out that the trial court was of the same opinion until it concluded discovery of one element of fraud was discovery as to all.

In view of the conclusions we have reached, it follows that the trial court erred in granting judgment

n.o.v. and hence is reversed and the cause is remanded with instructions to vacate that portion of the order which dismisses the complaint and to reinstate the verdict and enter judgment thereon, allowing interest at six per cent per annum on the principal amount thereof from the date of the verdict.