Argued and submitted March 28, reversed and remanded in part,
affirmed in part August 3, reconsideration denied September 16,
petition for review allowed November 15, 1983 (296 Or 56)
See 298 Or 514, 693 P2d 1296 (1985)

# MAINE BONDING & CASUALTY COMPANY,
## *Respondent - Cross-Appellant,*

*v.*

# CENTENNIAL INSURANCE COMPANY,
## *Appellant - Cross-Respondent.*

### (A79-11-05471; CA A23760)

667 P2d 548

Michael A. Lehner, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Mitchell, Lang & Smith, Portland.

Emil R. Berg, Portland, argued the cause for respondent - cross-appellant. With him on the briefs were John R. Barker, and Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff is the excess liability insurer and defendant the primary insurer for Great Balls of Fire, Inc., whose negligence caused fire damage to the property and business of Gene Hamilton. Hamilton's claim was ultimately settled for $475,000, comprised of defendant's $100,000 policy limits and $375,000 from plaintiff's excess coverage. Plaintiff contends that defendant's failure to act in good faith and with due diligence to effect a settlement with Hamilton caused plaintiff's share of the settlement to be higher than it would otherwise have been. The jury found defendant liable and awarded plaintiff damages of $62,000. Defendant appeals, assigning as error the trial court's denial of its motion for a directed verdict. Plaintiff cross-appeals from the trial court's refusal to award attorney fees pursuant to ORS 743.114.

The fire occurred on March 2, 1977, in Twin Falls, Idaho.[1] Shortly thereafter, plaintiff and defendant hired independent adjusters, and an adjuster was also retained by Hamilton. There was evidence that the investigation conducted by defendant's adjuster was deficient.

The insured's liability was clear. The initial estimates of the damage by plaintiff's, defendant's and Hamilton's adjusters, respectively, were $250,000, $450,000 and $459,659 (exclusive of business interruption loss). Thus, it was never in doubt that the loss exceeded the limits under defendant's policy and that plaintiff would have to pay some amount.

In April, 1977, Hamilton's attorney wrote defendant that the loss was approximately $800,000. Nevertheless, at the trial of this action, the attorney testified that during the first few months after the fire Hamilton would have accepted $227,000 or $228,000 in full settlement. The attorney explained that Hamilton's need at that early stage was to have ready cash "to get back into business." No offer to settle for that amount was communicated by Hamilton or his attorney to defendant or plaintiff.

In June, 1977, defendant offered its policy limits to Hamilton as partial settlement. Plaintiff learned of that offer

---

[1] The parties assume that Oregon rather than Idaho law applies to this action. Because neither party raises the conflict of laws question, we do not reach it.

some time during the summer of 1977, but apparently did not find out about it directly from defendant. Because of a disagreement over the amount of available coverage under defendant's policy, defendant did not pay the $100,000 to Hamilton until December, 1977. In September of that year, Hamilton had filed an action against the insured, seeking damages of $703,000. The attorney defendant retained for that action did not prepare the defense adequately. Furthermore, he purported to tender the defense to plaintiff shortly before the scheduled trial date. The parties now agree that defendant had the duty to defend at all stages. Plaintiff never extended authority to defendant to settle beyond the primary limits. Defendant never made a meaningful proposal to plaintiff for a full settlement offer to be communicated to Hamilton.

Defendant's only assignment of error is that the court wrongly denied the motion for a directed verdict. As we read the motion, it was made solely on the ground that there was insufficient evidence to submit the case to the jury. Although defendant now makes certain arguments to the effect that it owed plaintiff no duty, we conclude that those legal arguments were not preserved in the trial court and are not presented by defendant's assignment of error. Accordingly, defendant's only argument for reversal which can be considered on appeal is that plaintiff did not adduce enough evidence to create a question for the jury.[2]

Although plaintiff's complaint can be construed as containing allegations of simple negligence, the parties appear to agree (and the jury was instructed) that plaintiff had to establish that defendant acted in bad faith *and* failed to exercise due diligence. *But see O'Keefe v. Safeco Insurance Company,* 55 Or App 811, 639 P2d 1312, *rev den* 292 Or 863 (1982). However, the parties do not agree what "good faith" means. Plaintiff's theory is that, in the context of an action for failure to settle within policy limits, "good faith" and "due diligence"

---

[2] We emphasize, however, that this opinion assumes *arguendo* but does not hold that defendant owed plaintiff a duty corresponding to the duty of an insurer to an insured to use due diligence and good faith to settle claims against the insured within policy limits. *See Portland Gen. Elec. v. Pacific Indem. Co.,* 574 F2d 469 (9th Cir 1978); *Portland General Elec. Co. v. Pacific Indem. Co.,* 579 F2d 514 (9th Cir 1978). In the light of our assumption, references in this opinion to the rights of insureds against insurers and to rights of excess against primary insurers are interchangeable.

are synonymous or that a failure to exercise due diligence necessarily means that there is an absence of good faith.

█        Plaintiff's theory appears to have been accepted by the Supreme Court in *Eastham v. Oregon Auto Ins. Co.,* 273 Or 600, 540 P2d 364, 542 P2d 895 (1975), where it stated:

> "* * * In *Kuzmanich v. United Fire and Casualty,* 242 Or 529, 532, 410 P2d 812 (1966), we said that 'only a decision made by an insurer who exercises due diligence in apprising itself of the material facts is entitled to be considered as made in good faith,' citing *Radcliffe* [*v. Franklin Nat'l Ins. Co.,* 208 Or 1, 298 P2d 1002 (1956)]. There is no contention in this case that defendant did not fully inform itself of the relevant facts. To the contrary, the complaint takes great care in alleging that defendant was in possession of all relevant information and, therefore, should have offered to settle. *Most authorities agree there is little difference between the concepts of 'good faith' and 'due care' where the duty of the insurer, as we stated in our original opinion, is to 'act as if there were no policy limits applicable to the claim and as if the risk of loss was entirely its own.'* See R. Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv L Rev 1136, 1146-148 (1954)." 273 Or at 611-12. (Emphasis supplied.)

Here, unlike *Eastham,* there was evidence that defendant did not exercise due diligence in ascertaining the material facts and that that failure resulted in the loss of a possible advantageous settlement within the first two or three months after the fire. Without more—and there was more—that evidence was sufficient to create a jury question.

Defendant argues further that it could not be liable because it had no "opportunity to settle." Defendant explains:

> "* * * [T]his case differs from previous bad faith cases because here there was clearly no opportunity for Defendant to settle the claim against its insured within its policy limits of $100,000. It was apparent to all parties immediately after the fire that the loss would far exceed those limits.
>
> "* * * * *
>
> "The Oregon Supreme Court in *[Eastham]* acknowledged that an insurer should make inquiries to determine if settlement is possible. That opinion, however, does not hold that the insurer can be liable when there was no opportunity to settle.

"Of course, the failure to inquire about settlement is only indicative of bad faith if the insurer relies on misinformation about settlement potential when deciding *not* to offer its limits. In other words, if the insurer has already tendered its limits, the ball is in the other court. As pointed out in *Merritt v. Reserve [Ins. Co.,* 34 Cal App 3d 858, 110 Cal Rptr 511 (1973)], there is no longer a conflict of interest between insurer and insured or excess insurer once the primary insurer has offered its policy limits. The party with the remaining money needed for settlement must then come forward." (Emphasis defendant's.)

■　Although defendant's argument finds some support in *Merritt* and other cases on which it relies, no decision by an Oregon court appears to support the argument, and the quoted language from *Eastham* is to the contrary. We think that defendant's argument begs the question. There was evidence to permit the jury to find that defendant had failed to exercise diligence in apprising itself of facts material to settlement and, therefore, that any absence of an opportunity to settle was of defendant's own making. Defendant's suggestion that, after it had offered Hamilton its limits, "the ball [was] in the [plaintiff's] court" also misses the point. The duty to defend and to explore the possibility of a full settlement was defendant's and that duty was not satisfied merely by defendant's tender of its limits.[3] The trial court did not err by denying defendant's motion for a directed verdict.

■■　Plaintiff cross-appeals from the trial court's refusal to award it attorney fees pursuant to ORS 743.114. That statute provides, in part:

"If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *"

---

[3] The jury was instructed: "[Plaintiff] owes [defendant] a duty of cooperation and a further duty to mitigate damages in the defense and settlement negotiations of the claim." There was evidence from which the jury *could* have found that plaintiff was derelict in discharging those duties.

Defendant argues that "[t]he statute should not apply to situations where the insurer has tendered the full amount of available coverage. This is not an action on a policy where the insured [sic] refused to pay." Generally, attorney fees under ORS 743.114 are recoverable in actions for an insurer's failure to exercise good faith and due diligence to settle within policy limits. *Groce v. Fidelity General Insurance,* 252 Or 296, 311-12, 448 P2d 554 (1968). Defendant's argument does not persuade us that that general rule should not apply here. *See Sch. Dist. No. 1 v. Mission Ins. Co.,* 58 Or App 692, 718-19, 650 P2d 929 (1982), *rev den* 294 Or 682 (1983); *Fick v. Dairyland Insurance,* 42 Or App 777, 601 P2d 868 (1979); *see also Portland General Elec. Co. v. Pacific Indem. Co.,* 579 F2d 514 (9th Cir 1978).

Reversed and remanded for an award of attorney fees to plaintiff; affirmed in all other respects.