Argued and submitted February 17, affirmed June 24, reconsideration denied
August 28, petition for review denied September 22, 1987 (304 Or 185)

# SPRAY,
*Respondent,*

*v.*

# CONTINENTAL CASUALTY COMPANY,
*Appellant.*

## (A8311-07306; CA A39014)

739 P2d 40

Peter R. Chamberlain, Portland, argued the cause for appellant. With him on the briefs was Bodyfelt Mount Stroup & Chamberlain, Portland.

Garry L. Kahn, Portland, argued the cause for respondent. With him on the brief was Emerson G. Fisher, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Warren, J., dissenting.

## ROSSMAN, J.

Defendant[1] insurer appeals a judgment awarding plaintiff $106,304.63 for injuries allegedly caused by defendant's failure properly to analyze, evaluate and attempt to settle a wrongful death action brought against plaintiff and $18,500 in attorney fees. We affirm.

Plaintiff is a medical doctor with a specialty in internal medicine. From 1972 to 1978, he operated an out-patient clinic for young drug abusers. The wrongful death action was brought against him by the estate of a clinic patient who died in 1977 of an overdose of Darvon prescribed by plaintiff. The gravamen of the complaint, which alleged general damages in the sum of $250,000, was that plaintiff had been negligent in permitting the drug to be dispensed to the deceased in an amount sufficient to cause his death if ingested all at once.

When the action was commenced, plaintiff was insured by defendant under an insurance policy with a liability limit of $100,000. The policy provides that defendant will defend any lawsuit brought against the insured arising out of the practice of his profession and retains to defendant the right to investigate, negotiate and settle any such claim. Pursuant to the terms of the policy, defendant hired an attorney to represent plaintiff on the wrongful death claim and suggested that he retain private counsel to advise him concerning the potential exposure to excess liability.

A month before trial, the attorney hired by defendant to represent plaintiff solicited a settlement offer from the malpractice plaintiff's attorney, who responded with an offer to settle for $200,000, which was twice the policy limit. Defendant did not counteroffer or make any further attempt to settle the wrongful death case and it went to trial. The jury found that the deceased's estate had been damaged in the sum prayed for and that plaintiff was 75 percent at fault and the deceased was 25 percent at fault. The trial court entered judgment against plaintiff in the amount of $185,000, plus costs, after deducting from the net verdict $3,500, which had been accepted by the estate in settlement of its claim against two manufacturers of Darvon. The damages awarded plaintiff in

---

[1] The claim against defendant Moore was dismissed before trial, and he is not a party to this appeal.

this action represent the amount of the judgment in excess of plaintiff's insurance policy liability limit, plus interest from the date of the judgment.

Turning to the trial of this case, defendant's representative testified that it made no effort to settle the wrongful death claim against plaintiff, because it believed that it could be successfully defended and that, even if a verdict was returned against plaintiff, it would fall far short of the policy limit. This evaluation of the case was based in part on the findings of the Oregon Medical Association Professional Assessment Committee, which had reviewed the allegations against plaintiff at defendant's request and had unanimously concluded that plaintiff's conduct was defensible, both on the basis of medical considerations and on the fact that the deceased had a history of drug abuse. Defendant's representative also testified that there was no indication that a reasonable settlement offer would be accepted.

■ Defendant assigns as error the trial court's denial of its motion for directed verdict on plaintiff's allegations that it was negligent in failing to "attempt to settle the case * * * so as to avoid personal excess liability to plaintiff" and in failing to "analyze and evaluate the case against plaintiff so that a proper settlement offer could have been made." On review, we examine the evidence in the light most favorable to plaintiff and determine whether there was sufficient evidence to warrant submission of the question of defendant's negligence to the jury. *Maine Bonding v. Centennial Ins. Co.,* 298 Or 514, 523, 693 P2d 1296 (1985).

■ In *Maine Bonding,* the Supreme Court summarized the standard of care an insurer owes to the insured in conducting the defense of a claim against the insured:

> "[T]he insurer must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim. The insurer is negligent in failing to settle, where an opportunity to settle exists, if in choosing not to settle it would be taking an unreasonable risk—that is, a risk that would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results." 298 Or at 518.

The court noted that, although its previous decisions had referred to the concepts of "good faith" and "bad faith," those terms tended to inject a subjective element into the formula—

the insurer's state of mind—and that "[t]he insurer's duty is best expressed by an objective test: Did the insurer exercise due care under the circumstances." 298 Or at 519.

Defendant contends that it was not negligent as a matter of law, because, under its evaluation of the case, the risk of an unfavorable result was slight and, given the fact that the only settlement offer made by the deceased's estate was for $200,000, it had no reasonable opportunity to settle. It contends, therefore, that under the circumstances it had no duty to make a settlement offer. It relies on *Eastham v. Oregon Auto. Ins. Co.,* 273 Or 600, 540 P2d 364, 542 P2d 895 (1975), an excess liability case in which the court held that the trial court had erred in submitting the question of the insurer's liability to the jury. We do not think that that case aids defendant here. In *Eastham,* liability on the underlying claim had been admitted; thus the only issue was the amount of damages. The court concluded that there was no jury question about the insurer's excess liability merely because it did not respond with a counteroffer to the plaintiff's offer on the day of trial to settle for the policy limit amount, which was more than twice the amount seen by experienced people as the probable settlement value.[2] However, in *Eastham,* the court was applying the pre-*Maine Bonding* standard of bad faith. The question was whether there was evidence from which the jury could infer that the insurer acted in bad faith in failing to counteroffer. In *Maine Bonding,* the court clarified that the test is not one of subjective good faith or bad faith, but is an objective, ordinarily prudent insurer standard. Thus, the court's evaluation of the evidence of bad faith in *Eastham* provides little guidance for us here, where the facts and the standard by which they are evaluated are different.

The duty that an insurer owes to the insured to settle a claim if, in choosing not to settle, it would be taking an unreasonable risk, does not end when the trial begins. Here, the jury may have found that, during the course of the trial, it became increasingly apparent that defendant's pretrial evaluation was ill-founded. Four experts testified on behalf of the

---

[2] The dissent is not only wrong about the applicability of *Eastham* to this case, it also misstates the facts in that case. It states that, in *Eastham,* there was a day of trial offer to settle "for an amount more than double the policy limits." However, the offer to settle was for $50,000 *or* the policy limit, whichever was less. The policy limit in that case was $25,000. 273 Or at 605.

deceased's estate. Dr. Spray acknowledged that one, whose testimony was sharply critical of his prescription practices, was a leading authority in the drug treatment field. The estate also called ten character witnesses, including a police officer, two ministers and a former Rose Festival princess. Plaintiff here was the sole witness for his defense.

There was evidence that the estate would have settled for $55,000 to $75,000 up to the time the jury returned its verdict. Even before the trial began, defendant had evaluated the case as being worth $50,000. The events of the trial may have affected the reasonable valuation of the claim. However, the attorney hired by defendant to represent plaintiff was not authorized to settle[3] and, during the trial, defendant did not have a representative with the authority to settle the claim on hand or in contact with the attorney representing plaintiff. The estate presented numerous witnesses, and no evidence was offered to corroborate or validate plaintiff's testimony in his own defense. The question is not whether defendant acted in good faith, but whether it acted reasonably. Because we conclude that there was sufficient evidence from which the jury reasonably could have concluded that the risk of an unfavorable result became increasingly apparent during the course of the trial, to the point that an ordinarily prudent insurer would have made an attempt to settle before the jury returned its verdict, that defendant had a reasonable opportunity to settle the case and that it took an unreasonable risk in choosing not to settle, we hold that the trial court did not err in allowing the issue of defendant's negligence to go to the jury.[4]

■■ Defendant next contends that the trial court should not have granted plaintiff's motion, at the close of the evidence, to strike allegations of comparative fault. Defendant

---

[3] The statement in the dissent that the trial attorney "believed the case had a value of between $15,000 and $25,000," 86 Or App at 164, is misleading. Although the attorney testified that he valued the case at that amount, he also testified that he never discussed his evaluation of the case with any representative of defendant. Thus, defendant had no knowledge of the attorney's assessment of the case, other than that he thought it was defensible.

[4] The dissent ignores the most relevant evidence, that the trial had gone badly and that defendant's evaluation of the value of the case, however reasonable it may have been until that time, was likely no longer accurate.

alleged that plaintiff was at fault in two particulars: he "maintained he was free of any negligence in the course of his treatment of [decedent] and desired and insisted that the lawsuit brought against him * * * be defended," and he was practicing medicine while maintaining only $100,000 of insurance. Assuming without deciding that comparative fault could be a defense to an excess liability claim, here the trial court did not err in removing the allegations from the jury. As to the first allegation, there was no evidence that plaintiff would have rejected an offer of settlement or that defendant's decision whether to settle would have been different if plaintiff had demanded settlement. As to the second allegation, the policy limit of the insurance contract in no way affected defendant's duty to defend and to settle. The duty, which arose out of the contract, would have been the same whether the limit of liability was $5,000 or $1,000,000. If, as here, defendant breached the contract duty by not exercising the care of an ordinarily prudent insurer with no policy limit applicable to the claim, it is liable for the excess judgment, regardless of the amount of the policy limit.

■　Finally, defendant challenges the award of attorney fees pursuant to ORS 743.114.[5] In *Groce v. Fidelity General Insurance,* 252 Or 296, 448 P2d 554 (1968), an excess liability action, the Supreme Court said that "the rights of the parties in these cases are contractual, and that it is consistent with the purposes of ORS 743.114 to allow attorney fees * * *." 252 Or at 312; *see Maine Bonding v. Centennial Ins. Co.,* 64 Or App 97, 667 P2d 548, *aff'd on other grounds* 298 Or 514, 693 P2d 1296 (1985). There was no error.[6]

We have reviewed defendant's other assignments of error, all of which involve jury instructions, and find them to

---

[5] ORS 743.114 provides, in part:

"If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

[6] We last faced this issue in *Bollam v. Fireman's Fund Ins. Co.,* 76 Or App 267, 709 P2d 1095 (1985), where we affirmed by an equally divided court a trial court's denial of attorney fees. The Supreme Court opinion reversing our decision did not address the attorney fees issue. *Bollam v. Fireman's Fund Ins. Co.,* 302 Or 343, 730 P2d 542 (1986).

be without merit. The instructions given were correct statements of the law. Defendant's requested instruction concerning its liability for the fault or negligence of the attorney who represented plaintiff at trial would not have added anything to the already adequate instructions, and the failure to give it did not create an erroneous impression of the law in the minds of the jurors. *See Waterway Terminals v. P.S. Lord,* 256 Or 361, 474 P2d 309 (1970).

Affirmed.

**WARREN, J.,** dissenting.

I would reverse, because I believe that there was no evidence from which a jury could properly find that defendant failed to exercise ordinary care in the performance of its contractual duties. The trial court submitted the case to the jury on two allegations: (a) defendant was negligent in failing to attempt to settle the case with the estate to avoid personal excess liability, and (b) defendant failed to analyze and evaluate the case against plaintiff so that a proper settlement offer could have been made. The two issues raise a single question: Was there any evidence that defendant was at fault in failing to settle the claim? Because I believe that the undisputed evidence which was relevant to that issue does not support an inference of negligence, I dissent.

The relationship between plaintiff and defendant arises solely from the contract of insurance. Defendant may be held liable in excess of its policy limits only if it breached its contract with plaintiff. The contractual duty is stated in *Maine Bonding v. Centennial Insurance Company,* 298 Or 514, 693 P2d 1296 (1985):

> "[T]he insurer must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim. The insurer is negligent in failing to settle, where an opportunity to settle exists, if in choosing not to settle it would be taking an unreasonable risk—that is, a risk that would involve chances of unfavorable results out of reasonable proportion to the chances of favorable results." 298 Or at 518-19.

The majority's statement of facts is incomplete and is not accurate in several respects. These are the facts I believe to be relevant to the issue submitted to the jury:

Shortly after the wrongful death action was filed, defendant advised plaintiff that the amount demanded in the complaint was in excess of his policy limits. He was advised that he should retain his own attorney to represent him with respect to potential excess liability. For several years before this action was filed, plaintiff had been under investigation by the Board of Medical Examiners for his prescription practices. It was the opinion of plaintiff and his attorney that a settlement in the wrongful death case would be damaging to plaintiff in that ongoing investigation. Plaintiff maintained throughout the wrongful death action that he was not negligent and, in fact, had presented a strong case before the Oregon Medical Association Professional Assessment Committee, which evaluated the case as one which could be defended successfully. Consequently, neither plaintiff nor his attorney ever put a monetary value on the case or demanded that the matter be settled within the policy limits.

In January, 1983, defendant solicited a settlement demand from the estate, which responded by letter offering to settle the case for $200,000, an amount double the policy limits. Defendant had first evaluated the case as having a value of $30,000 but had subsequently raised that evaluation to $50,000 because of awards by jury verdicts in other cases while the wrongful death case was pending. Pursuant to its internal practices, defendant reevaluated the case every six months and frequently discussed its defensibility with the attorney whom it had hired to represent plaintiff, who believed that the case had a value of between $15,000 and $25,000. He based his opinion on the life expectancy and life productivity of a person with the deceased's background. He considered that the deceased had been on drugs for several years and had unsuccessfully attempted to withdraw with the help of several physicians, including plaintiff. The estate's attorney had, in fact, evaluated the case at between $55,000 and $75,000 and testified that he would have recommended to his client that she settle the case for an amount between those figures. That fact was not communicated to defendant. All participants in the litigation either believed that the case was defendable on liability or did not have a jury verdict value near the policy limits. Plaintiff wanted the case defended, not settled.

In summary, plaintiff maintained steadfastly that he

was not negligent, and the Oregon Medical Association Professional Assessment Committee agreed. Likewise, there is no evidence that the insurer's monetary evaluation of the case, assuming liability, was mistaken. The evidence the majority relies on to show that the prospects of winning the case grew worse during trial does not alter that conclusion. The estate's own attorney testified:

"Q  Can you explain why you would be willing to recommend settlement in that amount, which was considerably less than the jury awarded in the case of approximately $185,000?

"A  Well, the case had its good points and its bad points. And I'm not sure that my world view is always consistent with everybody else's. I know that some people have a strong reaction to people that use drugs. And it's not a favorable reaction. At the same token, I think that people are becoming more enlightened, and I had hoped to be able to convince people through the experts that drug addicts, whether it be alcohol or heroin or valium or caffeine, is a form of disease and it deserves good medical care. Somewhere in the middle of those two views is room for compromise. And I felt the case could be compromised if they would, meaning C.N.A., see it at all my way. But I never heard from them, so I understood they never saw it my way. The jury did see it my way.

"* * * * *

"Q  If the offer had been made to settle that we talked about previously in the area that you mentioned during the trial itself up until the verdict came in, would you have recommended to your client that she accept the offer?

"A  Well, on that upper end, $75,000, yes, I would have."

Although the majority says that *Eastham v. Oregon Auto. Ins. Co.,* 273 Or 600, 540 P2d 364 (1975), does not aid defendant, I believe it demonstrates why defendant was entitled to a directed verdict.[1] In *Eastham,* on the day of trial plaintiff offered to settle for an amount more than double the policy limits. The insurer made no counteroffer. The jury returned a verdict in excess of the policy limits. The court said:

---

[1] The majority says that *Maine Bonding's* reference to "negligence" rather than "good faith" or "bad faith" changed the applicable legal standard in this kind of case. *Maine Bonding* merely indicated that the ideas of good or bad faith are misleading and should not be used instead of a "reasonable care" standard. *Maine Bonding* contributed only a change of terminology, not a change in the standard of care.

"In this case the uncontroverted testimony establishes the maximum and minimum values that the experienced lawyers of the parties placed upon the case at a time before the verdict when they had substantially full information. The record is replete with testimony that when lawyers negotiate they start by putting the most optimistic worth on the case from their client's point of view, and then modify this evaluation as necessary to a point where the amount is still compatible with their client's interest. In so doing they sometimes reach a figure which is considered mutually advantageous. If so, the case is settled; if not, it is tried. Plaintiff's lawyer evaluated the case at $12,000 to $14,000. The company's attorney believed it to be worth $6,000 or $7,000 and testified in the present case that the maximum verdict which reasonably could be expected was $15,000. These amounts must be taken as the reasonable extremes, with the apparent reasonable settlement value probably equidistant between the extremes. * * * We do not believe that, in this posture, the jury could reasonably draw any inference of bad faith from the company's failure to make a counteroffer. Plaintiff's offer on the day of trial was more than twice that seen by experienced people as the probable settlement value. The company had a $10,000 cushion of its own money between the most optimistic evaluation of plaintiff's case and its policy limits. The company was justified in electing to try the case rather than making the gesture of extending a counteroffer. An insurance company is not required to offer to settle or face an action for bad faith in such a situation. To hold otherwise would mean that almost any case would be submitted where the recovery is in excess of the policy limits." 273 Or at 608-09.

On rehearing, the court added:

"It is this court's opinion that it is not possible to determine intelligently the issue of the insurer's bad faith without consideration of evidence bearing upon the apparent value in settlement of plaintiff's original case against the insured prior to verdict. In the present instance the evidence shows that with full knowledge of all relevant facts as they were subsequently disclosed at trial, everyone, including plaintiff's experienced lawyer, evaluated the case at much less than the policy limits." 273 Or at 611.

The facts here are parallel. The only offer was to settle at twice the policy limits. The insurer was not bound to counteroffer. When all the facts were disclosed at trial, no one,

not even plaintiff's attorney, believed that the verdict would exceed the policy limits.

An insurer's contractual duty is to exercise the care of an ordinary prudent insurer. The fact that we know, with hindsight, that the jury verdict was in excess of the policy limits is not evidence that the insurer was negligent in analyzing and evaluating the case. For the foregoing reasons I believe that defendant was entitled to a directed verdict.

I agree with the majority that the trial court did not err in withdrawing from the consideration of the jury the claims of contributory negligence. My reasoning, however, is based solely on my view of the responsibilities of the parties arising from their legal relationship, which was based on a contract. Neither of the charges of "contributory negligence" alleged by defendant violated any duty that plaintiff had assumed under the contract and could in no way have relieved defendant of its legal obligation to analyze and evaluate the case properly or to settle it within the policy limits under appropriate circumstances.