Argued and submitted July 28, 1989, affirmed June 27, 1990

William H. STUMPF,
Carl E. Stiff, M.D. and
Milwaukie Women's Clinic, P.C.,
*Respondents,*

*v.*

CONTINENTAL CASUALTY COMPANY,
*Appellant.*

(A8404-02347; CA A46240)

794 P2d 1228

William L. Hallmark, Portland, argued the cause for appellant. With him on the briefs were William G. Earle and Hallmark, Keating & Abbott, P.C., Portland.

Richard P. Noble, Lake Oswego, argued the cause for respondents Stumpf. With him on the brief was Kathryn H. Clarke, Portland.

Garry L. Kahn, Portland, argued the cause for respondents Stiff and Milwaukie Women's Clinic, P.C. With him on the brief was Emerson G. Fisher, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Buttler, P. J., dissenting.

## ROSSMAN, J.

In this excess liability case, defendant insurance company (CNA) appeals a judgment entered in favor of Stiff, its insured, and the Stumpfs, his assignees, for damages allegedly resulting from its negligent evaluation, investigation and negotiation of a medical malpractice claim against Stiff. CNA makes forty-seven assignments of error, arguing, *inter alia,* that (1) it was entitled to make certain references at trial to the Professional Assessment Committee that reviewed the malpractice claim against Stiff; (2) it is not vicariously liable for conduct of counsel that it hired to defend Stiff; (3) it was entitled to assert defenses based on the comparative fault and non-cooperation of its insured; (4) Stiff's assignment to the Stumpfs impermissibly split his cause of action; (5) plaintiffs should have been required to produce certain documents; (6) plaintiffs' damages should be limited to the amount of Stiff's leviable assets; and (7) the amount of attorney fees awarded the Stumpfs was unreasonable.[1] We affirm.

Stiff, a physician, was insured under CNA's liability policy for $1,000,000. In 1983, the Stumpfs brought an action against him for medical malpractice, seeking $3,000,000 in damages for his alleged failure to diagnose Mrs. Stumpf's breast cancer. Under its policy, CNA undertook Stiff's defense. On the day before trial, the Stumpfs offered to settle for the $1,000,000 policy limits, but Stiff would not consent. Three days later, he demanded that CNA settle for the policy limits. CNA subsequently made settlement offers of $100,000 and $150,000, which the Stumpfs rejected. The jury returned a verdict against Stiff for $3,000,000.

Stiff assigned his excess liability claim against defendant to the Stumpfs but retained his claim for lost income and general damages. Stiff, Milwaukie Women's Clinic and the Stumpfs[2] then brought this action against CNA, alleging that its negligent evaluation, investigation and negotiation of the claim against Stiff resulted in a judgment for $2,000,000 in excess of its policy limits. A jury found for all plaintiffs, and

---

[1] CNA's arguments that the trial court erred in its jury instructions on the insurer's duty and in its denial of CNA's motion for a directed verdict are without merit.

[2] Mrs. Stumpf died before the trial in this action, and her estate was substituted.

the trial court entered judgment in favor of Stiff for general damages of $4,916, lost income of $102,500 and attorney fees of $35,805.33 and in favor of the Stumpfs for the excess judgment of $2,000,000, plus attorney fees of $692,325 and prejudgment interest of $769,300.

■ CNA first argues that the court misapplied ORS 41.675 when it ruled that CNA could not refer to or examine witnesses in any respect about the Professional Assessment Committee (PAC) of the Oregon Medical Association (OMA), which reviewed the underlying case against Stiff. According to CNA, plaintiffs used the ruling as a sword by suggesting to the jury that CNA was negligent in its evaluation of Stiff's case, because it failed to evaluate him as a witness, to get an independent medical opinion regarding his conduct or to obtain his consent to settlement through policy procedures. CNA contends that Sias, its claims representative, could have rebutted plaintiffs' suggestions by testifying that the PAC reviewed Dr. Stiff's medical care and treatment of Mrs. Stumpf, that Sias attended that review, that the PAC voted on whether the case was defensible and that the review affected CNA's evaluation.[3] However, the court's ruling prevented it from doing so. It further argues that permitting that testimony from Sias would not have contravened the requirements of ORS 41.675(3), because it would not constitute a "communication to" or "findings" of the committee. In those circumstances, it contends, the court's ruling was prejudicial, because it prevented CNA from presenting evidence basic to its defense.

Although the argument presents a close question, we conclude that the trial court did not abuse its discretion. ORS 41.675 provides, in pertinent part:

"(1)  As used in subsection (2) of this section *'data' means written reports, notes or records* of tissue committees, governing bodies or committees of a health care facility licensed under ORS chapter 441, medical staff committees and similar committees of professional societies in connection with training, supervision or discipline of physicians, or in connection with the grant, denial, restriction or termination of clinical privileges at a health care facility. The term also

---

[3] CNA made that "probable evidentiary offering" in its memorandum in opposition to plaintiffs' motion *in limine*.

includes the *written reports, notes or records* of utilization review and professional standards review organizations.

"(2)    All data shall be privileged and shall not be admissible in evidence *in any judicial proceeding* * * *.

"(3)    *A person serving on or communicating information to any* governing body or *committee* described in subsection (1) of this section *shall not be examined as to any communication to that committee or the findings thereof.*" (Emphasis supplied.)

By its terms, the privilege afforded by that statute applies "in any judicial proceeding," regardless of the relevance of the evidence. Sias supplied information to the OMA and to members of the committee. Accordingly, the clear language of the statute precluded him from being examined as to "any communication to" or "findings" of the committee.[4] It may be that Sias' testimony that he was present when the PAC reviewed Stiff's care of Mrs. Stumpf and that CNA had relied on *what Sias observed at the meeting* to evaluate the case would have fallen outside the purview of the statute. However, CNA proposed to have him testify that the PAC had voted on whether the case was defensible and that *its evaluation of the defensibility of the case had substantially affected CNA's opinion about its defensibility.*[5] The necessary inference is that the committee agreed that the case was defensible.[6] Because that testimony would have conveyed the substance of the committee's findings, the trial court did not err in ruling it inadmissible.[7]

---

[4] CNA also argues that, because Sias' superiors did not communicate to the committee, they should have been allowed to testify as to what he reported to them about the committee's proceedings. However, because it was CNA, through its agent Sias, that communicated to and attended the PAC meeting, it could not be permitted to testify through any of its representatives about the committee's findings.

[5] According to CNA, had they been allowed to testify, Sias and his superiors would have told the jury that they were aware that the PAC had voted 8 to 1 that the underlying case was defensible.

[6] The dissent's argument demonstrates why the trial court was correct in excluding Sias' testimony. Regardless of the actual vote of the PAC members, Sias' testimony would have led the jury to believe that the PAC had found the claim defensible. Plaintiffs would be powerless to rebut any false impression that the testimony left, because its cross-examination necessarily would involve inquiry into the actual findings of the PAC. Defendant's proposed testimony simply comes too close to being a statement about the findings of the PAC to be permitted under the statute.

[7] CNA's contention that plaintiffs used the court's ruling as a sword is meritless. It was CNA, not plaintiffs, that initially invoked ORS 41.675(3) to preclude plaintiffs

■ CNA's second argument is that the trial court erred in holding it responsible for the negligence of its counsel in conducting the actual litigation of Stiff's case. According to CNA, only if an employer has the right to control an employee's performance may it be held vicariously liable, under traditional agency principles, for that individual's conduct. It argues that an insurer has no right to control the independent professional judgment of the counsel that it hires to defend its insured. Moreover, it asserts, because an insurer cannot practice law itself, its contractual duty to defend must be delegable. For those reasons, it contends, we should adopt the rule in *Merritt v. Reserve Ins. Co.,* 34 Cal App 3d 858, 882, 110 Cal Rptr 511, 527 (1973), that, although an insurer has the duty to employ competent counsel to defend an insured, "[t]he conduct of the actual litigation * * * remains the responsibility of trial counsel * * *."

We decline to adopt that broad a view. The precise issue has not been decided in Oregon. However, in *Giusti v. Weston Co.,* 165 Or 525, 108 P2d 1010 (1941), the Supreme Court considered whether a hospital association that had contracted to furnish medical services to a high school was liable for the negligence of the physicians that it had employed to perform those services. It stated:

> "It is argued that a physician, by the very nature of the services he renders, is not subject to the control of those who employ him, and, therefore, that he must be regarded as an independent contractor and not as a servant. But the test of the right to exercise control over the agent as to the manner and details of his work, in a case of this kind, must give way to the rule that one bound to performance of a duty by contract cannot absolve himself from such obligation by devolution of performance thereof upon a stranger to it." 165 Or at 531.

The court concluded that "the defendant * * * could not secure immunity from liability for the negligence of the physicians it might employ to perform the contract on its behalf by the plea

from deposing Anderson, a physician who served on the PAC. CNA then argued that Sias should be permitted to testify, in essence, that the PAC had voted that Stiff's case was defensible. As the trial court noted, that would have produced the incongruent result of allowing CNA to introduce testimony of the PAC's findings, while preventing plaintiffs from obtaining evidence that could impeach the panel's findings or otherwise support its case. Moreover, CNA did not object at trial to plaintiffs' argument or the statements of its witnesses on the ground that they were misleading.

that it exercised due care in the selection of such physicians." 165 Or at 532.

■  We can discern no reason to apply a different rule in the context of an insurer's duty to defend. According to *Restatement (Second) Agency,* § 214:

> "A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty."

That duty may be created by contract. *See Restatement (Second) Agency,* § 214, *comment e.* Stiff's contract with CNA provided, in part:

> "The company shall have the right and duty to defend any suit against the insured seeking damages which are payable under the terms of this policy applicable to [professional liability] * * * and may make such investigation and settlement of any claim or suit as it deems appropriate."

Given CNA's contractual duty and the degree of control that it retained over Stiff's defense, we apply what appears to be the rule in the majority of jurisdictions: An insurer may be vicariously liable for the actions of its agents, including counsel that it hires to defend its insured.[8] *See, e.g., Smoot v. State Farm Mutual Automobile Insurance Co.,* 299 F2d 525, 530 (5th Cir 1962); *see also Annot.,* 63 ALR3d 725 (1975), including Supp 72-73 (1989).

■  CNA's third argument is that it should have been permitted to assert affirmative defenses based on Stiff's comparative fault and failure to cooperate. With respect to its comparative fault defense, CNA argues that most commentators favor applying such a rule in insurance "bad faith" litigation, because it encourages each side to deal fairly with

---

[8] CNA also argues that the trial court erred in failing to give this instruction:

> "If you find defendant reasonably relied on diligent, good faith evaluation by counsel retained to represent its insured, you may consider such reliance as evidence of defendant's exercise of due care towards its insured."

That instruction is an accurate statement of the holding in *Bohemia, Inc. v. Home Ins. Co.,* 725 F2d 506, 513 (9th Cir 1984), applying Oregon law. However, read as a whole, the jury instructions were accurate and complete and presented CNA's theory of the case.

the other. Moreover, it points out, ORS 18.470,[9] the comparative fault statute, contains no exception for excess liability claims. It urges us to adopt comparative fault as an appropriate defense in this case.

We decline to do so. The rights and duties of the parties to an insurance policy are contractual. *See Groce v. Fidelity General Insurance,* 252 Or 296, 312, 448 P2d 554 (1969); *Spray v. Continental Casualty Co.,* 86 Or App 156, 162, 739 P2d 40, *rev den* 304 Or 185 (1987). Therefore, the duties of each are limited to those derived from the policy. With respect to CNA's duties, its policy provided that "[t]he company shall have the right and duty to defend any suit against the insured * * * and may make such investigation and settlement of any claim or suit as it deems appropriate." Because "[t]he right of the insurer to control the defense of the litigation carries with it the duty to exercise diligence and care toward the insured," *Maine Bonding v. Centennial Ins. Co.,* 298 Or 514, 517, 693 P2d 1296 (1985), CNA had a contractual responsibility to perform its "duty to defend" with due care. With respect to Stiff's duties, however, the policy requires, generally, only that the insured give written notice of "the happening of any event, incident or occurrence reasonably likely to involve this insurance"; that he give notice of claims or suits brought against him; and that he cooperate fully in the conduct of his defense. Nowhere does it impose on him a general duty of "due care" toward the insurer. Indeed, it would be nonsensical to hold that an insured who has bargained away control of his own case nevertheless may be liable for conducting it negligently. Stiff's alleged comparative negligence is not relevant to the contractual liability of CNA.

An insured's breach of the policy's cooperation clause, if proved, would provide a complete bar to recovery. In that regard, CNA has alleged, in essence, that Stiff breached the cooperation clause by (1) failing to ask the company to

---

[9] ORS 18.470 provides:

"Contributory negligence shall not bar recovery in an action by any person or the legal representative of the person to recover damages for death or injury to person or property if the fault attributable to the person seeking recovery was not greater than the combined fault of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the percentage of fault attributable to the person recovering. This section is not intended to create or abolish any defense."

keep him informed about developments in his case; (2) failing to tell it that he was at fault or that there was substantial evidence against him; (3) failing to tell it that he was likely to lose and that an excess judgment would be entered against him; (4) failing to tell it why he believed that an excess judgment was probable when he demanded that it settle within policy limits; (5) failing to tell it that he was making a *bona fide* demand, rather than just attempting to set it up for a bad faith case; and (6) refusing to authorize settlement negotiations prior to trial. Those allegations do not, as a matter of law, constitute *wilful* non-cooperation, which is required to establish the defense. *See Rosalez v. Unigard Insurance Co.,* 283 Or 63, 67, 581 P2d 945 (1978). The trial court did not err in striking CNA's affirmative defenses.

■   CNA's fourth contention is that Stiff's assignment to the Stumpfs violated the rule against splitting a single cause of action. According to CNA, the partial assignment gave plaintiffs an unfair advantage at trial by giving them four arguments to defendant's one and by permitting them at different times to reinforce each other, to take differing positions or even to cross-examine their own witnesses.

We disagree. The California Court of Appeals has explained the history of the rule against splitting a cause of action this way:

"At common law, a partial assignee had no legal standing to sue; the underlying rationale was that the original creditor could not split his cause of action and sue the debtor in two actions, and he could not bring about the same result by assigning part of the claim to another and subjecting the debtor to two suits by different plaintiffs. Enforcement of a partial assignment of a claim was permitted in equity, however, by the process of requiring joinder of all interested parties; i.e. the assignor and all partial assignees." *Cain v. State Farm Mutual Automobile Insurance Co.,* 47 Cal App 3d 783, 794, 121 Cal Rptr 200, 207 (1975).

The court pointed out that, with the elimination of the distinction between law and equity and the adoption of liberal rules of joinder, obstacles to enforcement of partial assignments have disappeared. It noted that, if the insured assigned only a portion of his cause of action, but all plaintiffs were joined together in a single claim against the insurance company, the judgment was binding on both plaintiffs, and the

defendant was "protected from future litigation arising out of the same facts under the doctrine of *res judicata*." 121 Cal Rptr at 208. It held that, under those circumstances, there was no violation of the rule against splitting a cause of action.

The Oregon Supreme Court used a similar rationale in *Wood et ux v. Baker et ux,* 217 Or 279, 284, 341 P2d 134 (1959). The question was whether the plaintiffs, who had been defrauded in a real estate transaction, had impermissibly split their cause of action by basing their action on the discovery of an element of fraud that was sufficiently recent to escape application of the Statute of Limitations. The court said:

> "The 'splitting of a cause of action' consists in the commencement of an action for only a part of the cause of action. [Citations omitted.] That of course is not the situation here. Here, all the charges of fraud are contained in the one proceeding. Here, the defendants are not required to defend more than once. As was said in *Todd v. Central Petroleum Co.,* 155 Kan 249, 124 P2d 704, 707, ' "The doctrine against splitting a cause of action is designed for the protection of defendants and not to give them an unjust advantage. Its object is to prevent a multiplicity of suits. * * *" ' Here there is no question of a multiplicity of suits and hence no violation of the rule against splitting a cause of action."

CNA relies on *Groce v. Fidelity General Insurance, supra,* for the proposition that, by making a partial assignment of his cause of action for the wrongful refusal of the insurer to settle within the policy limits, an insured violates the rule against the splitting of causes of action. In *Groce,* however, the court specifically noted that

> "[t]he assignment of that one cause of action to two separate plaintiffs did result in each of them pursuing an independent action against the [insurer]." 252 Or at 305.

By contrast, Stiff's partial assignment to the Stumpfs did not subject CNA to the possibility of multiple actions, because Stiff and the Stumpfs joined as plaintiffs. Accordingly, it did not violate the rule in *Wood et ux v. Baker et ux, supra,* against splitting a cause of action. The fact that plaintiffs outnumbered defendant does not constitute a ground for reversal.

■    CNA next contends that the trial court improperly applied the attorney client privilege and work product doctrine to exclude relevant evidence. We conclude otherwise.

The information sought by CNA included documents relating to the assignment agreement between Stiff and the Stumpfs, depositions and access to the files of the Stumpfs' attorneys related to the underlying medical malpractice case and materials in the files of Stiff's attorney relating to the present action. Most of that material falls squarely within the attorney client privilege, and plaintiffs did not waive it by commencing the present action. *See* OEC 503(2); OEC 511. With respect to material protected only as work product, CNA failed to make the required showing of substantial need and undue hardship required by ORCP 36B(3). To the extent, if any, that the trial court excluded some non-privileged material, its errors were not prejudicial.

■    CNA next argues that, for two reasons, the trial court erred in failing to limit the Stumpfs' damages to $175,000. First, it contends, Stiff's assignment conveyed to the Stumpfs his right to collect damages resulting from CNA's failure to settle within the policy limits. It points out that, under the terms of the assignment, if the case against CNA were unsuccessful, the Stumpfs could execute only on the amount of Stiff's assets at the time of the original execution on the judgment, which was $175,000. Therefore, it argues, Stiff's damages could not have exceeded $175,000, and the Stumpfs' recovery should have been limited to that amount. Second, it asserts that Oregon courts have never determined the rule for measuring damages in an excess liability case when the insured's leviable assets are insufficient to satisfy the entire judgment. Acknowledging that most courts apply the judgment rule, measuring damages by the amount of the excess judgment, it nonetheless argues that we should adopt the Michigan Rule, limiting damages to the amount of the insured's leviable assets. According to CNA, that rule protects insureds, while avoiding windfalls.

Both contentions are preposterous. Neither contention is persuasive. The Supreme Court addressed the argument that an assignee's damages should be limited to the amount that, by the terms of the assignment, would release the insured from any liability on an excess judgment in *Groce v. Fidelity General Insurance, supra,* 252 Or at 310:

"We believe * * * that the intent of each assignment is clear. The effect of following the defendant's argument would

be to defeat the purpose of these assignments. An injured plaintiff would be reluctant to accept an assignment unless it provided that the insured would be released only upon *full* recovery from the insurer. And, if the insured could assign only on those terms, he might feel compelled to bring the litigation himself in order to see that his interests were properly protected. The result for the insurer would be the same, but the insured and the plaintiff would be remitted to what the Pennsylvania court aptly called a 'needlessly complicated and unjust procedure.' " (Emphasis in original.)

That reasoning is valid in this case, too.

Moreover, we do not agree that limiting recovery against an insurer to the amount of the insured's leviable assets represents the appropriate measure of damages. That would encourage insurance companies to gamble with the defense and negotiation of claims against its policyholders. It also would provide a windfall to an insurer fortunate enough to have an insolvent insured. *See Carter v. Pioneer Mut. Cas. Co.,* 67 Ohio St 2d 146, 423 NE2d 188, 192 (1981). In *Spray v. Continental Casualty Co., supra,* 86 Or App at 162, we held that an insurer who had failed properly to evaluate and settle a wrongful death action against its insured was liable for the entire amount of the excess judgment. We see no reason to depart from that measure of damages here.

CNA relies on *Stubblefield v. St. Paul Fire & Marine,* 267 Or 397, 400, 517 P2d 262 (1973), and *Lancaster v. Royal Ins. Co. of America,* 302 Or 62, 67, 726 P2d 371 (1986), for the proposition that an assignment may eliminate an insured's legal liability, thus limiting the damages recoverable by his assignee. The results in those cases, however, were dictated by the language of the indemnity clauses from which they arose. They have no bearing on the proper measure of damages in an excess liability case.

Finally, because plaintiffs prevailed on the merits, CNA is obligated to pay "a reasonable amount to be fixed by the court as attorney fees." *Former* ORS 743.114 *(now* ORS 742.061); *see Spray v. Continental Casualty Co., supra,* 86 Or App at 162. CNA contends that the trial court's award of

$692,325 was unreasonable.[10] What constitutes a reasonable fee is a matter about which reasonable minds can differ. However, it is primarily a question for the trial court, and we will set aside its determination "only if it is not supported by substantial, competent evidence." *Johnson v. Jeppe,* 77 Or App 685, 688, 713 P2d 1090 (1986). In this case, there was expert testimony that the case was difficult and unusual from plaintiffs' standpoint, that plaintiffs' counsel was exceptionally well-qualified because of his experience as a litigator and his familiarity with the underlying case, and that the result obtained was excellent. An attorney who has worked with the Oregon State Bar on attorney fees issues gave expert testimony that the time estimates of plaintiffs' counsel were reasonable and "their estimates of reasonable fees are reasonable estimates." On this record, we cannot say that the trial court's award was an abuse of discretion.[11]

Affirmed.[12]

**BUTTLER, P. J.,** dissenting.

I concur with almost all of the conclusions reached by the majority. However, contrary to the majority, I conclude that the evidence that defendant offered relating to Sias' attendance and observations at the PAC meeting, that the PAC had voted on whether the case was defensible and that defendant's evaluation of the defensibility of the case was affected by the PAC's evaluation was not prohibited by ORS 41.675. Although I agree that evidence of the outcome of the vote was not admissible, I do not agree that "[t]he necessary inference [from the proffered evidence] is that the committee voted that the case was defensible." 102 Or App at 306. If, for example, the PAC had voted 5 to 4 that defendant's claim was

---

[10] CNA also asserts that, because plaintiffs' action sounds in tort, it is inappropriate to award attorney fees under *former* ORS 743.114. We disagree. Although an insured may recover for an insurer's negligent performance of its duty to defend, that duty arises from the parties' contract. An excess liability case is therefore an "action * * * upon [a] policy of insurance" under the statute. *See Spray v. Continental Casualty Co., supra,* 86 Or App at 162.

[11] "The purpose of ORS 743.114 allowing recovery of attorney fees by claimants under insurance policies is to encourage settlement of such claims without litigation and to reimburse successful plaintiffs reasonably for moneys expended for attorney fees in suits to enforce insurance contracts." *Chalmers v. Oregon Auto. Ins. Co.,* 263 Or 449, 452, 502 P2d 1378 (1972). Those purposes are served by the award in this case.

[12] None of CNA's other assignments warrants discussion.

not defensible, it is not inconceivable that the closeness of the vote might have led defendant reasonably to believe, from what it had heard and observed at the meeting, that the claim was defensible. Plaintiffs' principal argument was that defendant did not obtain an independent evaluation of the claim or of Dr. Stiff's performance as a witness. The proffered evidence would have tended to rebut those arguments. Therefore, the exclusion of the evidence cannot be said to be harmless.

The majority states that the question of admissibility of the evidence is a close one; however, it concludes that the trial court did not abuse its discretion in excluding it. However, the evidence was either prohibited by the statute or it was not. If it was not prohibited, the court had no discretion to exclude it, because the evidence was not only relevant, it was material to CNA's defense. CNA did not offer any "written reports, notes or records," ORS 41.675(1)(2), or "any communication to that committee or the findings thereof," ORS 41.675(3), which would have been inadmissible. Because the statute did not require exclusion of the evidence and because it was relevant, the court had no discretion to exclude it. OEC 402.

The trial court also erred in overruling defendant's objection to plaintiffs' inquiry on cross-examination of Hart, who was one of Dr. Stiff's attorneys in the principal malpractice action. On direct examination, Hart testified that he had believed Stiff at the time of the trial of that action and volunteered that he still believed him. On cross-examination, plaintiffs were permitted, over objection, to bring out that Hart, in a later medical malpractice action, had represented another doctor, that Stiff had been a witness for the plaintiff, and that Hart had argued to the jury that Stiff's opinion should not be believed, because, among other reasons, he was no longer in practice and was selling Amway products.

What Hart argued as an advocate in another case is irrelevant to Hart's personal opinion of Dr. Stiff, given under oath in the present case. The evidence should have been excluded. Because it was offered as impeachment, the jury was permitted to discount Hart's testimony that tended to show that defendant had made efforts to evaluate the case against Stiff and that Hart, as part of the evaluation, believed what

Stiff had told him had happened concerning the alleged malpractice.

Accordingly, I would reverse and remand for a new trial.